WASHINGTON FORD *v.* AUGUSTUS FLINT AND WIFE.

*Deed.    Life Estate.    Conditional Fee.    Delivery.    Probate Court.*
*Ejectment.    Distribution of Estates.    Adverse*
*Possession.    Betterment.*

The granting part of the deed in question, executed November 15th, 1819, and delivered in January, 1862, was as follows: " I, Nathaniel Spear," &c., " do hereby freely give, grant, convey and confirm unto her, the said Asenath Ford, during her lifetime, and to her eldest son which shall be living at her decease, and to his eldest son, and to his eldest son at his decease, and so on from the eldest son to the eldest son to the latest generation, a certain piece of land described," &c., *habendum,* " to have and to hold said granted and bargained premises, with all the privileges thereof, unto her, the said Asenath Ford, and to her heirs, as aforesaid, to her and their own use and behoof forever." *Held,* that this deed created only a life estate in Asenath Ford, and not an estate tail; and that her eldest son, living at her decease, was not barred by her deed of said premises, but to ok in remainder, and is entitled to hold according to the form of the gift.

The granting part contained no words of *inheritance,* only words of *purchase;* and the word " heirs " in the *habendum* was used as *descriptio personarum,* a single word to designate the persons in the grant who were to take after the said Asenath.

The deed was not delivered by Nathaniel Spear during his life, but was delivered the day after his death by his administrator, and the said Asenath and her grantees, including the defendants, occupied and claimed title under it, through her whole life from 1826 to 1865. *Held,* that the defendants cannot impeach the validity of the deed by reason of its non-delivery by Nathaniel Spear.

In the matter of the distribution of the estate of Nathaniel Spear, in 1826, the presumption is that it was done in a proper manner, and that all was done which the statute required, although the records of the probate court do not show it fully. The record does not show that anything was done contrary to the statute; it only failed to show that everything was done which the statute required.

The defendants and their grantors, having entered into possession under the deed of Asenath Ford, and claimed, under that deed, throughout their possession prior to her death was not *adverse* to the plaintiff, the eldest son of said Asenath.

The defendants cannot be allowed for betterments, made prior to the death of Asenath Ford, under their plea of not guilty in this action of ejectment. Their remedy is by a proceeding under the statute.

EJECTMENT for lands in Braintree. Plea, the general issue, and trial by jury at the January Term of the Orange county court, 1866, STEELE, J., presiding. The writ was dated June 2d, 1865, and served June 3d, 1865.

Ford *v.* Flint et ux.

The plaintiff, to support the issue upon his part, gave in evidence a deed from Nathaniel Spear to Asenath Ford, describing the demanded premises, dated November 15th, 1819, received for record January 16th, 1826, and recorded in the land records of said Braintree, March 21st, 1826, and proved that the said Nathaniel Spear was the father of the said Asenath Ford; that the plaintiff was the oldest son of the said Asenath Ford living at the time of her decease; that Nathaniel Spear died in January, 1826, and Asenath Ford died March 1st, 1865; that the said Asenath, and her husband and father of the plaintiff, Elisha Ford, went into possession of the demanded premises under claim of title, by virtue of said deed from Nathaniel Spear to Asenath Ford, in the spring of the year 1826, after the death of the said Nathaniel Spear, and remained in possession, under such claim, until 1829, and the defendants' evidence showed that one Brown bought of them then, and he and his grantees, down to the defendants, have been in possession ever since, and that the plaintiff made demand of the premises in question after the death of his mother, said Asenath Ford, and before the commencement of this suit.

The plaintiff also offered in evidence the probate records of the district of Randolph in which said Braintree is situated, showing the settlement of the estate of said Nathaniel Spear.

It was conceded that Nathaniel Spear had, at the date of said deed to said Asenath, title to, and was in possession of, the demanded premises, and that the defendants, were at the time of the commencement of this suit, and at the time of said demand, and still are in possession of the same.

None of the foregoing testimony, on the part of the plaintiff, was controverted, except as to the validity of the deed of Nathaniel Spear to Asenath Ford, which was questioned upon the ground that it was not delivered, as is fully stated hereafter.

The plaintiff also gave evidence as to the value of the rents and profits of said premises for the years 1865 and 1866, and rested his case.

The above mentioned deed and said probate records were objected to by the defendants, and admitted by the court subject to all legal objection.

The defendants on their part, for the purpose of showing color of title to said premises, introduced in evidence a deed of warranty of said premises, from the said Elisha and Asenath Ford, to Henry Brown, dated May 5th, 1829, recorded in the land records of Braintree, June 26th, 1829, and it appeared that Brown went into possession immediately after buying of said Ford and wife, and they moved out, and Brown and his grantees have been in possession ever since, and the defendants are one of said grantees. And the defendants showed that said premises had passed by like deeds successively to the defendants.

The defendants also gave evidence tending to show that on the 15th day of November, 1819, the said Nathaniel Spear was the owner and in possession of a large farm in Braintree, being his home farm, of which the demanded premises formed a part, and that on said 15th day of November, for the purpose of dividing said property and lands among his children, he executed the deed in question, with other deeds, to his other children, of other portions of said farm, and retained the possession of all of said deeds, and of the whole of said farm, together with the demanded premises, until his death in 1826, except two of said deeds which were, previous to his death, taken clandestinely from his possession and recorded, and that the deed to the said Asenath was never delivered to her in the lifetime of her father, and was not intended by him to be so delivered, but to be retained by him subject to his control until his death.

There was no dispute but that the next day after his death the deed in question, with others so, as aforesaid, executed at the same time were found among his papers, and were then delivered to the grantees by Jacob Spear, his son, who was subsequently appointed administrator of the said Nathaniel's estate.

The widow and some of the heirs were present and did not object, and none of the heirs or the administrator have ever questioned the validity of the deed so far as appeared from the evidence.

The defendants further gave evidence tending to show that the said Nathaniel treated all the deeds so executed to his children, as aforesaid, just alike at the time of their execution, and had the same intention in regard to all of them.

Ford *v.* Flint et ux.

The defendants further gave evidence tending to show that Henry Brown went into possession of the demanded premises, at the time he took his deed from Elisha Ford and wife, claiming to own the fee of said premises, and that he and his grantees have ever since been in possession of said premises, claiming to own them, and purchased them supposing, at the time of the purchase, that they were getting a good title in fee. There was no evidence, but their grantors supposed the same, nor was there any evidence as to what their grantors believed or supposed on the subject. It appeared that Elisha Ford, the husband of the said Asenath Ford, is still living.

There was no evidence that said Brown, or any of his grantees, had ever notified the plaintiff, or any one else, that they claimed the land adversely to the plaintiff, or adversely to their deed, or under their deed, except what is to be implied from taking it and putting it on record.

The defendants also gave evidence tending to show that improvements had been made by him and his grantors since the said deed from Ford and wife to said Henry Brown, upon the demanded premises, and that said betterments, made previous to 1865, were worth as much as, or more than, the value of the rents and profits of said premises during the years 1865 and 1866, but made no claim that he had made any improvements in the years 1865 and 1866, and made no claim but that the rents and profits previous to 1865, were largely in excess of value of improvements or betterments made in 1865, and the plaintiff did not seek to recover any rents and profits previous to 1865, but conceded that the defendants' title was good during the term of the natural life of the said Asenath Ford.

The court ruled that the defendants were estopped from denying the validity of the deed from Nathaniel Spear to Asenath Ford; and that said deed created only a life estate in said Asenath, and did not constitute an estate tail, and that, therefore, the plaintiff is not barred, and was entitled to recover, and submitted to the jury only the question of the rents and profits in 1865 and 1866, and directed the jury to allow the defendants nothing for betterments and improvements,—to all of which decisions and rulings of the court the defendants excepted.

---

---

The material part of the deed from Nathaniel Spear to Asenath Ford, dated November 15th, 1819, is set forth in the *syllabus* above.

The records of the probate court in reference to distribution of Nathaniel Spear's estate was as follows:

" STATE OF VERMONT, }
   *Randolph District, ss.* }

At a probate court holden at Brookfield, in and for the district aforesaid, on the 22d day of March, A. D., 1827.

. Present: Hon. Frederick Griswold, Judge.

When Stephen Spear, a son and heir of Nathaniel ·Spear, late of Braintree, in said district deceased, presented his petition in writing praying for a committee to be appointed to divide the real estate of the said deceased among the heirs, and the said heirs agreeing to the same, a warrant for the purpose was accordingly issued to Sampson Nichols, Henry Smith and Alfred Nevins, all of said Braintree, and giving them particular directions in their duty, and to make their report under oath, as soon as may be, together with their warrant.

A true record.      Attest,

                           J. K. PARISH, *Register.*

Pursuant to a warrant to us directed by the Hon. Frederick Griswold, Esquire, judge of the probate court for the district of Randolph,

We, the subscribers, having been sworn agreeably to the directions of said warrant, have appraised, upon oath, all of the real estate whereof Nathaniel Spear, late of Braintree, deceased, intestate, died· seized, within this state, except as therein excepted, as follows:

One hundred and seventy-six acres of land, besides the widow's dower, amounting in the whole to the sum of two thousand and twenty-six dollars and sixty-six cents,   -   .  $2,026 66

An advancement made by Nathaniel Spear to Jacob Spear of a deed of lot No. 18, second division, in said Braintree to the amount of   -    -    -    -    630 00

Also to Asenath Ford, by deed, of a part of the home farm, dated both on November 15th, 1819, to the amount of  630 00

                                          $3,286 66

One fifth part of which is,   -    -    -    -    657 33

We having done this, set off to the children and heirs of the said deceased as follows:

To Nathaniel Spear about sixty-five acres, bounded as follows, &c., at the sum of,   ·    -    -    -  $657 33

To Jacob Spear, one piece of land containing three and
    one-half acres, bounded as follows, &c., at,    -      $27 33
He having received, by way of advancement, the sum of,    630 00

                                                 $657 33
To Asenath Ford, one piece of land containing three and
    one-half acres, bounded as follows, &c., valued at the
    sum of, -      -     -     -     -     -     $27 33
Received by way of advancement,     -     -     630 00

                                                 $657 33
To Stephen Spear a farm in Bethel, &c., containing forty-
    two acres, &c., valued at,     -     -     -     657 33
To Arunah Spear sixty-one acres, bounded, &c., valued at,   657 33
    Given under our hands, at Braintree, this 29th day of March, in
the year of our Lord 1827.

                    SAMPSON NICHOLS, ⎫
                    HENRY SMITH,      ⎬ *Committee.*"
                    ALFRED NEVINS,   ⎭

    Then follows in the record the action of the court showing that
the report was accepted, approved and ordered to be recorded.

    *J. W. Rowell* and *C. W. Clarke*, for the defendants.

    I.   The deed from Nathaniel Spear to Asenath Ford conveys
what was known at common law as a conditional fee, or an estate
tail, and construction and effect are to be given to it according to
the principles and policy of the common law as administered in
dealing with that description of estate prior to the statute *de donis.*

    No language could with greater certainty define what heirs of
Asenath Ford were intended, than those here employed, " to her
and her eldest son."

    But it is also said, that to make a good conditional fee at common
law the word *heirs* was essential, that being an estate of inheritance,
as well as the estate in fee simple, the only difference being that in
the former case the gift is to *particular heirs*, and the latter to the
*general heirs.*   This requisite is supplied by the *habendum.*   " To her,
the said Asenath Ford, and to her heirs, as aforesaid, to her and
their own use and behoof forever."   2 Bacon Abr. 245, B. ;  Shep.
Touch. 76, ch. 5 ; 4 Kent's Com. 519, 7th ed.

    The gift made by this deed being a conditional fee the defendants

insist that the conveyance ought to be construed in accordance with, and affected by all the incidents to which that kind of estate was made subject by the common law of England before the *statute de donis*, and so the condition being fulfilled, the eldest son of the donee being alive, the tenant in tail had power to alienate in fee, and bar the issue, and the deed of warranty from Asenath Ford and her husband to Brown, conveyed the fee of the demanded premises, relieved of the limitation.

II. The estate was then an inheritable estate, and so there being issue born alive, Elisha Ford had a life estate by the courtesy. 4 Kent's Com. 12, 26, 31. And this he might convey; Elisha Ford being still alive the plaintiff cannot recover. *Mattocks* v. *Stearns*, 9 Vt. 326.

III. The defendants are not estopped to question the validity of the deed to Asenath Ford.

This was a conveyance in fee by Asenath Ford and her husband of the demanded premises by deed poll, and in such case the grantee is not estopped to show want of title in the grantor.

A deed poll cannot operate as an estoppel by *deed* against the grantee, because his seal is not to it, nor against the grantor, because the estoppel would not be mutual. Shep. Touch, 53 ; Co. Lit. 47, 6, 363 ; *Gaunt* v. *Wainman*, 3 Bing. 69.

And an estoppel *in pais* is created by acceptance of possession only where the deed is accepted in one of those relations which imply an obligation to return the possession, and a sort of allegiance to him under whom, or in subjection to whose interests it is held, such as in the relation of landlord and tenant, morgagor and mortgagee, &c., but does not apply to the relation of grantor and grantee. 2 Wash. Real. Prop. 467, §§ 12, 13 ; 472, § 21 ; *Small* v. *Proctor*, 15 Mass. 495 ; *Blight's Lessee* v. *Rochester*, 7 Wheat. 548 ; *Gardner* v. *Greene*, 5 R. I. 104 ; *Averill* v. *Wilson*, 4 Barb., S. C. 180 ; *Sparrow* v. *Kingman*, 1 Comst. 242 ; *Moore* v. *Farrow*, 3 A. K. Marshall, (Ken.) 41 ; *Willison* v. *Watson*, 3 Pet. 47 ; *Winlock* v. *Hardy*, 4 Littell, (Ken.) 272 ; *Voorhies* v. *White's Heirs*, 2 A. K. Marshall, 488 ; *Crittenden* v. *Woodruff*, 6 Eng. Rep. (Ark.) 84 ; 2 Smith's Lead. Cases, 654 *et seq.*

In the case at bar the defendants were in possession, and were entitled to hold until the plaintiff should show title in himself. Naked possession was sufficient for their purpose in this suit until the plaintiff should make title. For this purpose he was obliged to introduce the deed from Nathaniel Spear to his mother. That is his title. To the introduction of that deed, if there had been any defect in its execution, appearing upon its face, rendering it void, it would be queer to doubt the right of the defendants to object to its admission as evidence. If that would be allowed, of course they would be at liberty to show that deed void for want of delivery.

But the defendants desired, in addition to that, to raise the question of the statute bar and insist on adverse possession, and to secure the advantage of that, they introduced their deed from Brown simply to show color of title, for it is said in *Brooks* v. *Chaplin*, 3 Vt. 282, that naked possession without color cannot prevail. But for this it might not have fallen out from whom the defendants claim title. Now the fact of the introduction of that title, under these circumstances, ought not to preclude the defendants from taking advantage of the other branch of defense.

IV. The deed from Nathaniel Spear to Asenath Ford is void for want of delivery.

Delivery and acceptance are essential to the validity of a deed. *Harrington* v. *Gage*, 6 Vt. 532 ; *Fish* v. *Gordon*, 10 Vt. 288. And whether there was delivery is a question of intent, and so one of fact for the jury. *Hatch* v. *Hopkins*, 5 Shep. 391. And if found among his papers after his death, no subsequent delay can make it operative. *Wiggins* v. *Lash*, 12 Ill. 132 ; *Roe* v. *Levick*, 8 Iredell's Eq. 88.

V. The plaintiff claims that the action of the probate court upon divisions of the estate of Nathaniel Spear regulating advancements settled all questions of the title of Asenath Ford, and makes it what that deed purports to convey.

How could that question effect the deed? It could not have the effect of a judgment *in rem*, or of one where the deed was in issue, for a committee of division was never erected into a tribunal to settle a question of that sort. The committee had no power to

ascertain what was an advancement, nor its amount. That was exclusively within the jurisdiction of the probate court. It was the duty of the court, before sending out the committee, to ascertain, 1st, the number and names of the heirs, and determine to whom the estate was to be distributed. 2d. What each one has received by way of advancement. On return of the report the court should have made a decree of distribution accordingly.

All this should appear of record. Nothing of the kind appears upon the record.

The defendants were entitled to an allowance for improvements made upon the estate since the deed to Brown, by way of recoupment, to the extent of the damages arising from *mesne* profits claimed by the plaintiff. Gen. Stat., p. 340, § 21 ; *Whitney* v. *Richardson*, 31 Vt. 300.

*B. F. Fifield,* for the plaintiff.

1. The deed does not create an estate tail. It is absolutely necessary that the word " *heirs* " should be used, to create an estate tail. Kent's Com. 4, p. 230 ; Hilliard's Abridg. 2, p. 3 ; Black's Com. 1, p. 91, (vol. 2, p. 115, old ed.) ; 1 Wash. Real Property, title " Tenant in Tail" ; 1 Swift's Dig., p. 80 ; 2 Preston's Estate.

Heirs are words of limitation and not of purchase, in the English law, and it was on this distinction that the rule in Shelley's case was based. But both in England and America the words " children," " issues," " sons," or " daughters," are construed as words of purchase, and in such case they do not take by descent from the parent, but by purchase directly from the original grantor, thus creating a vested interest in remainder which the parent cannot defeat by a conveyance. 1 Swift's Dig., p. 81.

2. But suppose it is construed the same as if it read " to Asenath Ford for life, and then to the heirs male of her body !" The entailment would take effect for a life or lives in being and twenty-one years, unless defeated by the donee in tail. Neither in England nor in America, where estates tail are recognized, could the donee in tail bar the entail except by a common recovery. It could not be done by deed. The result is, the deed from Asenath Ford and her husband

has no effect to bar the plaintiff. *Giddings & Wife* v. *Smith*, 15 Vt., 344.

3. But the English construction of entailments has never been adopted in this State. It is not adapted to our institutions; we borrowed our laws chiefly from Connecticut, and in 1779, by statute, we adopted the common law as it was understood and practiced in New England. Words which create an estate tail have always been regarded in Connecticut as giving the first taker an estate for life, and the next taker an estate in fee. *Allen & Wife* v. *Bunce*, 1 Root, 96. And although they passed a statute to that effect afterwards, it was simply in affirmance of the common law as practiced by them. 1 Swift's Dig., p. 82.

Our statute passed in 1839 is a copy of the Connecticut statute and is simply in affirmance of the law as it stood both here and in Connecticut. Gen. Stat., p. 446, §§ 1–6; *Giddings* v. *Smith, ante;* *Blake & Wife* v. *Stone et al.*, 27 Vt., 475.

4. The statute of limitations is no defense; the plaintiff brought his suit within two months after the death of the tenant for life. *Giddings & Wife* v. *Smith, ante;* *Jackson* v. *Schoonmaker*, 4 Johns. 390; *Wallingford* v. *Haile*, 15 Mass. 471.

5. The husband of the tenant for life has no curtesy. Gen. Stat. 414, § 15.

6. The defendants cannot contest the validity of the deed from Nathaniel Spear to Asenath Ford; they and their grantors have occupied and claimed title under it. So does the plaintiff. *Brooks* v. *Chaplin*, 3 Vt. 281; *Kidder* v. *Murphy*, 7 Sergt. & Rawle, 230; Adams Tillinghasts' Eject. 50; *Witham* v. *Perkins*, 2 Greenl'f. 400; *Jackson* v. *Marcius*, 2 Wend. 357; 5 Harr. & Johns. 226.

7. The deed to Asenath Ford was treated as an advancement in the settlement of her father's estate. This decree of the probate court was binding on all parties interested at that time.

8. The defendants were not entitled to betterments; the case does not show that they supposed they had good title. If they were, they could not be offset in this action, but could only be by a declaration of betterments after judgment.

The opinion of the court was delivered by

BARRETT, J.    The plaintiff claims title in himself by virtue of said deed of Nathaniel Spear.  One ground of defense is that that deed created a conditional fee at common law, unaffected by the statute *de donis*, and that the entail was barred by the deed of warranty in fee of said Asenath to said Brown, and that Brown took an absolute title in fee under the last named deed.   The plaintiff, on the other hand, claims that his mother took only an estate for life, and that on her death, he took *in remainder*, and is entitled to hold according to the form of the gift; the title thereafter to go to such persons and in such manner as the laws of this State shall warrant.    Hence arises the first question to be decided.

The *conditional fee* or *estate tail* at common law, before the statute *de donis*, was created by a conveyance to the donee of an estate that would have been an absolute fee simple, were it not limited by the condition of issue being born, who, according to the form of the gift, were to take by inheritance from the said donee.   In conformity with this idea, on the birth of the prescribed issue, such donee could convey an absolute fee simple, and thus bar the issue, as well as the reversion of the donor.

Of course the donee could not convey such absolute fee-simple, unless it had been vested in him by the form and effect of the gift,— contingent at first, to be sure, upon the performance of the condition by the birth of the prescribed issue.   " It was a *fee-simple* on condition that the donee had issue."   2 Bl. Com. 110.   By the gift the entire title passed from the doner, subject only to the possibility of reverter. During the life of the donee, the property and estate were vested in the donee, beyond all power of the donor to affect the character of the estate.   Upon the birth of issue the absolute and unqualified disposition of it was in the donee; and if such donee made a conveyance of the fee, the grantee took such fee as against both the original donor and his heirs to whom the estate was limited.   4 Kent Com. 11 *et seq.*   4 Cruise Dig. by Greenl..68 §§ 5, 6, 7.   Co. Lit. 19 *a* (by Thomas, 1 vol. p. 507 *et seq.*)   In *Willion* v. *Berkley*, Plowd. Rep. 233, Ch. J. DYER said : " The fee simple vested in the beginning, though by issue the donee had power to a lien, which he

had not before, but the issue was not the cause of having the fee, but the first gift." On p. 250, " Further, as to the common law before the statute, if land had been given to a man and to his heirs of his body begotten, this was not taken to be a full and perfect inheritance until the donee had issue of his body. * * * * But (as I take it) it was a *fee-simple* presently before issue, but the having of issue made it more full than it was before ; for after issue he had power to alien, and thereby to bar the issues and the donor," &c., &c. In the margin it is said, herewith agree, 1 Finch, 100 ; 2 *Ib.* 121.

In the case before us, the deed, in the granting part, does not purport to convey a fee, either simple or conditional to Asenath, but only an estate for life. By the terms of the grant the estate in her would not be conditional at all. It would not depend on any contingency for its character, or as to her rights in respect to it. It was the same to her whether any of the prescribed after-takers should be born during her life or in existence at her death, or not. No fee of any kind having been conveyed to her, there was no quality of estate existing in her on which the birth or existence of any of the prescribed sons could operate to invest her with any different title or incidents of title from that specifically defined in the grant. If a conditional fee or an estate tail was created at all by the grant of the deed, it was created in the plaintiff, and not in his mother. It is in this respect like the case of *Owen* v. *Smyth*, 2 H. Bl. Rep. 594. This view would seem to be conclusive against the ground of defense now under consideration, unless upon the face of the whole instrument, by construction, the intent was manifest on the part of the said Nathaniel to create an estate tail, or conditional fee in said Asenath, and the instrument itself has the legal requisites for such a purpose. The granting part of the deed expressly gives the land to her during her life time, and *to her eldest son living at her decease,* and to the successive eldest sons as named. These are mere words of *purchase,* and not of *inheritance.* It is conceded that, in order to constitute an estate tail, the land must pass from the original donee by *inheritance* to the next one entitled—that is, he must take as *heir* from her, and not as grantee from the party creating the estate,—that she must take and hold the whole estate under the deed with no limitation on its

26

quality, except as affected by the restriction to the specific line of direct heirship.

While it is further conceded that the words of the granting part of the deed would not create such an estate, for want of words of inheritance, it is claimed that resort may properly be had to the *habendum*, upon familiar rules governing the construction of such instruments, and that the word " *heirs* " therein supplies what is lacking in the granting part of the deed, and shows that the designation of the *oldest sons* in succession is to be construed as equivalent to the expression, " the eldest mail heirs of her body in succession." We assent to the propriety of the rules invoked, but fail to find them efficacious for the desired purpose. The meaning of the word " heirs " is not confined to its technical import of a *taker* by *inheritance*. If not affected by other language in the instrument, that sense, and a corresponding legal effect, would be given to it. But when used in connection with other language describing and designating the same subject, the whole is to be taken into consideration, and a meaning is to be assigned to the word according to what shall appear to be its intended sense, within the scope which both law and use have rendered it susceptible of. Now, in the *habendum*, " to her the said Asenath Ford, and to her heirs, *as aforesaid*," &c., is the expression. This shows that the grantor did not intend to change, by enlargement or otherwise, just what is imported by the language in the granting part of the deed, and that " *heirs* " was used as *descriptio personarum*—as a comprehensive single word—to mean the same thing as, and as a substitute for, the specific designation in the grant of the persons to take after the said Asenath. See remarks of Lord THURLOW, in *Jones* v. *Morgan*, 1 Bro. Ch. Rep. 219. It does not import that she or they were to take in any different character, or any different quality of estate, from the character assigned, and the estate created, by the words of the granting part. She was to hold as *aforesaid*,—her heirs were to hold as *aforesaid ;* she to hold during her lifetime,—her eldest son living at her decease to hold next, and so on. Under this construction the plaintiff was not to take by *inheritance* from his mother, but *in remainder* after her special estate had terminated. Wherefore, the learning adduced in

the argument as to the statute *de donis*, and the barring of entails by *fine and common recovery*, as affected by the constitutions, statutes, and adjudications in this and other states in the union, need not to be further considered in this case.

II. In view of such construction, for the purpose of defeating title in the plaintiff under said deed, it is claimed that the defendants are entitled to impeach its validity, for reason of its non-delivery by the plaintiff's grantor.

Directly upon the death of said grantor his estate was settled in due course of law, and distribution was made of it between his several children, and therein the parcels conveyed by said deed to Asenath, and a parcel conveyed by a like deed to her brother Jacob, were appraised, and reckoned as advancement to each of them respectively, and they were made equal to the other children by apportioning the other real estate of their father between all his children in parcels to make the value to each equal.

Each took and held the respective parcels under said deeds, and the apportionments thus made by the probate court.

Now, it will be noticed that Asenath and Jacob, to whom said deeds of Nathaniel had been delivered, did not take the land described in said deeds under and by virtue of said apportionment, but under the deeds themselves, which were treated by all the parties interested in Nathaniel's estate as having already taken effect, to invest said Asenath and Jacob with the title to said respective parcels described therein. *Advancement* implies property already vested in, and owned by, the party advanced. The three and one half acres apportioned to each of them, and the larger parcels apportioned to the other brothers who had not been advanced, were held by each respectively by virtue of and under said apportionment.

Thus their respective rights accrued, and as between themselves, have always been asserted, recognized, and acted on.

It is clear then that it would not be allowable for Asenath herself to deny the valid delivery of said deed to her. She treated it, and all interested treated it, as giving her a valid title from the time of its coming into her hands ; and she took possession under it, and held such possession for nearly a year before said apportionment by the

probate court was made,—she having taken possession in the spring of 1826, and said apportionment not having been made till the 15th of March, 1827. Her title then to the land in question clearly accrued to her under and by virtue of that deed, and she held and occupied under it till 1829, when she conveyed by deed of warranty in fee to Brown, who entered and occupied thereunder till he conveyed by like deed; and the land has passed by like deeds successively to the defendants. Neither she, nor Brown, nor any in the chain of title, nor the defendants, have ever claimed by virtue of any other paper title, nor by any other title, only such as may have been acquired by possession under color given by said deeds; and the defendants now claim, as one ground of defense, by a title acquired by adverse possession under *color of title* given by the deed of Asenath to said Brown.

Now it is clear that that deed of Asenath to Brown conveyed only the title and quality of estate that she had, and the deed, by which such title and estate were created in her, being on record, executed with all due formality, would be notice to all the world of the estate which she held, and could convey, and so would preclude any ground to a subsequent grantee for asserting any fraud upon him in this respect, so far as the import and apparent validity of the deed is concerned, whatever might be his rights upon the covenants in the deed of warranty taken by him. By treating the deed of Nathaniel to Asenath as valid to secure to her, and to them, all the title and estate that it purported to convey to her, and through her whole life, from 1826 to 1865, having held and enjoyed the premises under the right which she thus acquired, as against all persons interested in said estate, it would seem not allowable now for the defendants to assert the invalidity of said deed for want of valid delivery, against a party entitled, by said deed, to the premises as an estate in remainder, upon the termination of the life estate created in Asenath by said deed. In thus holding upon the case before us, we are not to be understood as deciding the question very much discussed in the arguments of counsel, and ruled in many of the cases cited, whether the defendants might not set up a title in said Asenath superior to, and independent of, the deed in question. In this case no such title

is averred or attempted to be shown. We, therefore, leave that question untouched.

III. A point is made that said action of the probate court should have no effect, for the alleged reason that the record produced does not show that it was taken in compliance with the requirements of the statute. The record does not show that anything was done contrary to the requirements of the statute. The most that can be justly claimed is, that it fails to show fully that everything was done that the statute required. The things which the record states to have been done were such as the statute required, and the presumption is that they were done in a proper manner. It states enough to warrant the presumption that all the things were done which the statute required. The language of Judge WILLIAMS, in *Giddings and Wife* v. *Smith*, 15 Vt. 344, is applicable in full force to the subject as now presented : " If there was any apparent irregularity in his proceedings, which, however, we do not perceive, we should think that at this distance of time, the regularity of the previous proceedings of the court should be presumed." In many subsequent cases the same view has been sanctioned and applied.

It must be held that said Asenath's advancement was by giving her the estate created by the deed referred to in said record, which is the same deed, and of the same land now in question, and that it was estimated according to its legal quality, viz : as a life estate in her, and, in that view, it was ascertained how much she was entitled to out of the other real estate, which was duly set out, and she held the whole accordingly.

IV. The claim that the defendants have acquired a valid title as against the plaintiff by *adverse possession*, we think, cannot be maintained.

The exceptions shows that Brown and his grantees entered under the deed of Asenath to Brown, and that they claimed under that deed throughout. The defendants gave that deed in evidence to show *color of title*, which is a technical form of saying that the party claims to have entered and held under the deed thus presented. The idea is conclusively excluded that Brown or any of his grantees ever claimed to hold in any other right than that created by said deed, and by the deeds in succession from Brown to the defendants. The

defendants, having no right but such as has accrued to them by virtue of the title existing in Asenath Ford, and a possesion taken and held under her, by taking possession, admitted her right as it existed and was shown by the record, and cannot now be permitted to ignore and repudiate the character of the possession which they thus held, and now to assert, as giving them a title against the plaintiff, a possession without right and as mere trespassers. *Brooks* v. *Chaplin*, 3 Vt. 281 ; Adams on Eject. (Ed. 1846) 47, *et seq.* and notes. Possession under such a title was not adverse to the plaintiff, first, for the reason that it was perfectly consistent with his title and right under the same deed from which said Asenath and her grantees derived their title. This in no manner touches a question that might arise in case the defendants had paper title derived from a source disconnected with, and independent of, the said Asenath's title and deed, to which their possession might be legitimately referred. Secondly, for the reason that the plaintiff could not assert his title as against the possession of the defendants, during the life of his mother.

V. As to *betterments*, sec. 21, ch. 41, Gen. Stat., was obviously designed to put the plaintiff's right in respect to the basis of his damages arising from *mesne* profits, upon the same ground as if no betterments had been made that the defendant would be entitled to be allowed for. Upon this rule and measure of damages, it would not be congruous or proper to subject the plaintiff, under the general issue, to a reduction of damages on account of improvements that must be excluded from consideration by the jury in ascertaining the amount of *mesne* profits as a ground of damages.

In respect to improvements for which the defendant may properly be allowed, the statute provides for a distinct proceeding, in which the matter can be brought to a distinct issue, and be tried on what legitimately bears on the subject. There are many things and questions that appertain to the subject of *betterments*, that do not appertain to the material matters put in issue and open to proof under the plea of *not guilty*. If the defendants have any right beyond that accorded by said sec. 21, they must assert it by the means provided for that purpose in other parts of the same chapter of the statutes.

Judgment is affirmed.