### BAILEY AND OTHERS *v.* WOODBURY.

### [IN CHANCERY.]

*Reforming a Deed. Evidence. Statute of Limitations.*

A deed of land obtained by a father from his daughters by misrepresentation and undue influence, whereby the fee was conveyed instead of a life estate, as the daughters intended, was reformed in equity ; and a purchaser from the father, with notice, was enjoined after the death of the father from claiming title thereunder.

The proof must establish beyond any fair doubt that a written instrument, especially one under seal, is false, before a court of equity will reform it.

The Statute of Limitations will not commence to run against a remainder-man until his right of possession occurs.

APPEAL from the Court of Chancery.

The bill alleged that the orators, Edwinah Bailey and Marietta Mosely, were daughters of William and Mary Woodbury, late of Berlin, deceased ; that on March 13, 1847, the said Mary owned in her own right, the hill farm of Jonathan Ayers, her father, then deceased, except that part thereof set out to Elizabeth Ayers, widow of the said Jonathan, as dower ; that the part thus owned by said Mary contained about 120 acres, was commonly called the " White House " place, and was occupied by the said William ; that prior to said 13th of March, proceedings for a divorce were instituted between the said William and·Mary, but were not prosecuted to a decree, but that their troubles were such that they separated, and made a disposition of their property, wherein the said Mary insisted that the property, which consisted mostly of real estate that she inherited from her father and of said " White House " place, should, on the death of the said William, become the property in fee of the said Edwinah and Marietta, and that the said William should have only a life estate therein ; that in pursuance thereof, on said 13th of March, the said William and Mary, by their deed of that date, duly acknowledged and recorded, conveyed to George Worthington a farm called the river farm, that part of said hill farm set out as dower as aforesaid, and said " White House " place, in trust, " to convey a life estate in said ' White House ' place to said William immediately on the execution of this instrument by the said William and Mary ; * * * and at the decease of the said William the said ' White House '

place is to be and become the property in fee of Marietta Woodbury and Edwinah Woodbury and their heirs and legal representatives; and the same is hereby given, granted, bargained, and sold and conveyed to them, except a life estate to said William "; that on the same day the said William and Mary, by another deed of that date, duly acknowledged and recorded, conveyed said " White House" place to the said Edwinah and Marietta, subject to the life estate of the said William; that on April 28, 1847, the said Worthington, by his deed of that date, duly acknowledged and recorded, conveyed a life estate in said "White House " place to the said William; that on said 13th of March, and for about three months thereafter, the said Edwinah and Marietta were at work in Lowell, Mass., and did not know of said deeds, and were wholly ignorant as to their rights and the rights of the said William in the premises, and that in May, 1847, the said William went to Lowell on a pretended visit to his said daughters, and on or about the 31st of said May, took his said daughters to the house of John Woodbury, in Salem, N. H., a brother of his, and there represented to them that the trouble between himself and his wife had left him an old man without a home, and concealed the fact that he then had a life estate in said premises, and represented to them that they could sign a writing that would give him such an estate, and begged of them to execute a writing to him that would give him the use of said premises during his life, and thereby save him from being homeless; that thereupon he and the said John, who claimed to be a justice of the peace, presented them a writing, which the said William represented to be an instrument giving him permission to use and occupy said premises during his life only, and giving him only a life estate therein; that the said William, deceitfully, fraudulently, unduly, and wrongfully using his influence as a father on his said daughters, and deceitfully and fraudulently concealing and misrepresenting his and their rights in said premises, procured his said daughters to sign said writing, which was in fact a quit-claim deed of said " White House " place, without knowing the contents thereof, and that the same was wholly without consideration; that about June, 1847, the said Edwinah and Marietta returned to Berlin, and were informed of the estate in said premises that had been conveyed to them as aforesaid, and always thereafter claimed such estate therein; that they procured the buildings thereon to be insured, and exercised acts of ownership over the same, and treated the same as their property, subject only to a life estate therein of the said William, and knew of no claim that the same was not their property in fee after the death of the said William,

until after his death in November, 1875; that during his lifetime, both before and after January 28, 1873, the said William gave out in speeches and otherwise, that he only had a life estate in said premises, and that on his death they would become the property of his said daughters, and that he treated said premises as their property, subject to his life estate; that said deed from the said Edwinah and Marietta to the said William was recorded in the land records of Berlin on July 6, 1850, but that the said Edwinah and Marietta had no knowledge thereof until after the death of the said William; that they had no knowledge of ever having signed the deed thus recorded, and never did, unless it was the instrument that the said William procured them to sign as aforesaid; that on January 28, 1873, the said William conveyed all his interest in said premises, and other lands, to the defendant, the defendant then well knowing that the said Edwinah and Marietta claimed to own said " White House " place, subject only to a life estate of said William therein, and that the said William claimed only a life estate therein, and that he treated the same as the property of his said daughters, subject to his life estate, and that the defendant after taking his said deed treated said premises in the same way, up to the time of the death of the said William, but that, since the death of the said William, the defendant had claimed said premises in fee, under his said deed thereof; that the defendant was in possession of said premises, and refused to surrender the same to the orators; and that said deed so recorded on July 6, 1850, was a cloud on the orator's title to said premises. *Prayer*, that said last-mentioned deed be declared void, and the defendant, and all persons claiming under him, be perpetually enjoined from claiming title thereunder; that the title of said premises be confirmed in the orators, and the defendant decreed to surrender possession thereof to them; that an account be taken, and for general relief.

The answer denied the equity of the bill, averred that the defendant is a *bona fide* purchaser, and set up the bar of the Statute of Limitations.

The answer was traversed, and testimony taken, and the case tried on bill, answer, traverse, and proofs, at the March Term, 1877, Washington County, REDFIELD, Chancellor, and a decree entered substantially according to the prayer of the bill. Appeal by the defendant.

*Huse & Lord* and *C. H. Pitkin*, for the orators.

*J. A. Wing* and *J. O. Livingston,* for the defendant.

The opinion of the court was delivered by

POWERS, J.   The bill seeks to reform a deed absolute in form, executed by the said Edwinah and Marietta to their father in 1847, and that the title to the premises therein conveyed, called in the pleadings and proofs the " White House " place in Berlin, be confirmed in the orators.   The bill goes upon the ground that Edwinah and Marietta executed the deed in question, supposing it conveyed a life estate only to their father, and that they yielded to their father's persuasion and relied upon his regard for their interests in executing the deed.   The deed conveys the fee, and the defendant is in possession, claiming an absolute title under the father.   The answer denies the equity of the bill, avers that the defendant is an innocent purchaser, and sets up the bar of the Statute of Limitations.

That a court of equity has jurisdiction to reform or set aside contracts, deeds, and other instruments which do not express the true agreement of the parties, is settled beyond debate.   It is also well settled in America, that parol proof may be resorted to, to establish the fact that the written instrument does not speak the true contract of the parties.   In like manner and for like reason, a written instrument which does express the contract in the form the parties entered into it, but expresses a contract consummated by any superior influence or advantage of position or relation which one of the contracting parties had and held over the other —so that they did not contract at arms length, may be set aside as being unconscionable, unfair, or fraudulent.   Familiar instances of the exercise of this jurisdiction are found in cases dealing with contracts made between attorney and client, guardian and ward, and parent and child.

But in all cases where the court is asked to overthrow a written instrument, especially one under seal, the authorities are uniform that the proof should establish the fact beyond any fair doubt that the instrument is a false instrument.   To cite authorities would imply that these propositions needed support.   The case at bar involves the finding of facts only.

22

Upon the evidence we are well satisfied that Edwinah and Marietta were induced to execute the deed in question, misapprehending its import, by yielding to that parental influence that their father wrongfully exercised over them, and that the deed does not express a conveyance that they assented to; and it should have effect only as the parties intended. The proofs also satisfy us that the defendant took his title with knowledge that the orators, in equity, owned the premises at the decease of their father. He cannot, therefore, be treated as an innocent purchaser. The Statute of Limitations would not run against the orators until their right to possession accrued at the death of their father.

Decree affirmed, and cause remanded.