## AMORY LEACH *v.* D. H. & T. G. BEATTIE.

*Tenants in Common. Adverse Possession. Ouster. Notice. Chancery.*

The plaintiff and B. being tenants in common of land, B. executed a mortgage of the whole piece to the defendants, which they foreclosed. *Held,* that in order that the giving of this mortgage should have efficacy towards constituting an *ouster* of the plaintiff, as the commencement of adverse possession on the part of the defendants, it must have been accompanied and followed by a claim, of which the plaintiff had knowledge, and by acts of possession, not only inconsistent with, but in exclusion of, the continuing right of the plaintiff as tenant in common.

The acts of the defendants in relation to the land, as detailed in this case, held insufficient in connection with B.'s mortgage to them, to amount to an ouster of and adverse possession against the plaintiff.

The mere fact that B.'s mortgage of the whole land was duly recorded, does not amount to constructive notice to the plaintiff of the existence of such a deed, and of the defendants' claim to the exclusive ownership of the land.

In matters of accounts between tenants in common, courts of chancery have concurrent jurisdiction with courts of law without regard to the necessity of a discovery.

BILL IN CHANCERY. The facts are sufficiently stated in the opinion of the court.

The Chancellor,—POLAND, J.,—at the March Term, 1859, dismissed the bill, *pro forma,* from which decree the orator appealed.

*William Heyward,* for the orator.

*Benton & Ray,* for the defendants.

BARRETT, J. This bill seeks discovery and an account by the defendants, as tenant in common with the plaintiff, of lot No. 23, second division, in the right of Alexander Stewart, in the town of Brunswick, of timber taken and sold from said lot by the defendants.

The answer admits the taking and sale of timber from said lot, but denies any right, title, or interest in the plaintiff in the lot. The defendants insist on a possessory as well as a paper title in themselves to the lot, and interpose the statute of limitations in their answer. They also insist that the plaintiff is not entitled to maintain this bill, for the reason that he has ample remedy at law. The case is before us upon bill, answer, traverse and proofs.

The evidence shows that Little, being in the possession and occupancy of said lot, on the sixteenth day of March, 1835, conveyed the same to Marshall ; that Marshall on the second day of September, 1835, conveyed the same to the plaintiff and William Bragg, who were partners in lumbering, and bought this lot, as well as considerable other land in its neighborhood, for the purposes of their business, and for awhile, and during one winter about the time of said purchase, cut and carried away lumber therefrom, in the prosecution of their said business,— that Bragg was the active man in the conducting of said business in the vicinity of said lands, the plaintiff contracting for the teams and furnishing more than half of the money for said business,—that afterwards said Bragg and the plaintiff settled and divided the proceeds of said lumber, and that since that time they have not carried on said business.

It shows also that Bragg, without the knowledge or consent of the plaintiff, on the twenty-sixth day of December, 1836, gave a mortgage deed of said lot to Schoff, who, at the March Term, 1838, of the court of chancery, obtained a decree of foreclosure upon said mortgage against Bragg, which expired without being redeemed on the twenty-first day of March, 1839. On the eleventh day of November, 1839, Schoff conveyed said land to the Messrs. Warden, and they, in April, 1848, conveyed the same to the defendants.

It thus appears that both parties derive record title from Little through Marshall.

The plaintiff has never conveyed his title and interest, and if he has lost the same, it is in virtue of an *ouster* and adverse possession by Bragg and those taking title from him. See *Shirras et al.* v. *Craig et al.*, 7 Cranch 34. No acts of possession, occupancy or use of the land are shown to have been done upon it, from the time that the plaintiff and Bragg did their lumbering on it, as above stated, till after the time of redemption had expired under said decree of foreclosure. Consequently if the plaintiff has lost his title and interest, it is by virtue of an *ouster* and adverse possession since said decree became absolute in favor of Schoff.

The lot is wild land, unfenced and unimproved, and has ever been so.

When the Wardens were about purchasing, they went with Schoff upon said lot and examined the lines, and counted the pine' trees then standing on it. After having purchased they appointed an agent to attend to the payment of the taxes, and to see that trespass should not be committed on this and their other neighboring lands. About the years 1840 and 1841, two or three persons applied to them for liberty to do logging and to get pump logs on said lot, and such liberty was given. It does not appear however that any thing was done in pursuance thereof. In connection with these applications, the Wardens were once on the lot and examined the lines, but were not on it at all after the year 1841. They did no logging or other work on said lot, nor any acts in reference to it except as above set forth. It appears that their agent, Austin, went upon the lot occasionally to see

whether trespass had been committed on it. Soon after the defendants purchased and took possession, they ran out the boundaries of the lot, and in the fall of 1848 and 1849 they did lumbering upon it, and since that they have occasionally cut a stick of timber, and have several times run one boundary line that was in dispute in a lawsuit between themselves and an adjoining owner, and they have paid the taxes on it ever since they took their conveyance.

These acts constitute all that was done by the Wardens and the defendants up to the time this suit was commenced.

We are unable to regard what was done by the Wardens as constituting or continuing a possession in fact, either actual or constructive, of any part of said lot. *Reed* v. *Field et al.,* 15 Vt. 672 ; *Sawyer* v. *Newland,* 9 Vt. 383 ; *Spear* v. *Ralph,* 14 Vt. 400. If done by a stranger they would hardly amount to a trespass. Having been done by one claiming to have color of title, it is necessary, in order to inure to his benefit as against a co-owner, that they should, at least, be as clear acts of taking and continuing possession as would be necessary as against a person having actual title to the entire lot.

In this view alone, the defence of adverse possession, against the plaintiff's title to an undivided half of the lot, must fail. Yet it is proper to remark, that the giving of said mortgage deed by Bragg, purporting to cover and convey the entire lot, could not of itself operate as an *ouster* of the plaintiff as co-tenant. *Roberts* v. *Morgan,* 30 Vt. 319. In order that the giving of such a deed should have efficacy *towards* constituting such *ouster,* it should, at least, have been accompanied and followed by a claim of which the plaintiff had knowledge, and by acts of possession not only inconsistent with, but in exclusion of the continuing right of the plaintiff under said deed to himself and Bragg.

The presumption is that a *tenant in common in possession* is holding for his co-tenant as well as for himself. The fact of giving such a deed by such a tenant can, at most, be treated only as matter of evidence, tending to rebut such presumption. In this case, however, it does not appear that Bragg, when he executed said mortgage, was any more in the actual possession of the lot than the plaintiff was. After the lumbering had been done in

the winter after their purchase, it seems that the lot was left and remained unoccupied, in fact, by any body. It would be unprecedented, and contrary to all reason, to hold that the giving of a deed by a tenant in common *not in possession* would operate as an *ouster* of the co-tenant, or even be evidence bearing against the presumption that the holding by a co-tenant is for the joint benefit of the joint owners.

When the acts claimed as operating in bar of the right of a co-tenant under his title deed, fall short of an exclusive adverse possession in fact, either actual or constructive, the parties are left to stand upon their rights under their respective deeds. For, in order for the statute to begin to run against a tenant in common, in favor of his co-tenant, there must be what the law will regard as an actual *ouster*.

Though not necessary, yet it may properly be further remarked, upon a point made in the argument, that it does not appear that the plaintiff had any knowledge, in fact, that Bragg had given such a mortgage, during all the period for which it is claimed that the statute was running against him; and it is not claimed that he is chargeable with notice thereof, except by the fact that said mortgage was duly spread upon the record soon after it was executed. We cannot, upon any principle, hold that such a recording would affect the plaintiff with notice of the existence of such a deed, and, as a consequence, of a claim by Bragg and his grantees to the exclusive ownership of the lot in question. Such recording can be held to affect only persons who take conveyance of the same land subsequently thereto, and not those who already have title. See remarks of POLAND, J., in *Roberts* v. *Morgan*, 30 Vt. 319.

In order for such deed to have any effect towards constituting an *ouster*, it was necessary that the plaintiff should have had knowledge of its existence, and that the grantee was claiming under it exclusive title to the entire lot.

As to the defence, that the plaintiff has ample remedy by suit at law: It seems that, at common law, the action of account did not lie for an account against a tenant in common who had obtained more than his share of the products or profits of the common property, unless the tenant sought to be charged had

been constituted by the other a *bailiff*, and, as such, had received the products and profits of the common property. Bac. Abr. Accompt. 1 Coke Lit. (by Thomas) 788 and notes. Selwyn N. P. 1, and other books *passim*. In ejectment no recovery could be had for such share of the profits and products ; and an action on the case could not be maintained unless there had been such a misuse of the property as amounted to a *tort*. The only means of obtaining such an account by one tenant in common of another was by bill in the court of chancery ; which court had original jurisdiction in that behalf, founded on that peculiar relation of the parties, and not at all depending on the need of discovery and the incidental right of administering full and final relief. 1 Story Eq. Juris. sec 466.

In this state the court of chancery is invested with as ample a jurisdiction as that court possesses in England, subject to only such restrictions and modifications as are provided by our statute. The extension of the action of account in England by the statute 4 and 5 Ann Ch. 16, and by a similar statute in this state to tenants in common and the like, has never been regarded as interfering with the jurisdiction of the court of chancery in this respect ; and under those statutes it has always been held, that, in matters of account between tenants in common, the courts of chancery, by bill, have concurrent jurisdiction with courts of law, by action of account.

The advantages attending a proceeding by bill over that by an action of account, have caused that action to fall in great measure into disuse ; and in cases like the present, scarcely an authority could be found for questioning the propriety of resorting to the court of chancery. Hence, and without pursuing the subject more in detail, it is not important to consider whether the statute of this state, allowing parties to be witnesses, in any manner affects the right of a party to resort to the court of chancery, when the subject matter falls within the concurrent jurisdiction of courts of law, and of chancery.

But if this were otherwise, it would seem difficult to maintain that the action of ejectment would be made to afford ample remedy to the plaintiff in the premises. In the first place, it is by no means certain that the acts, alleged in the

Leach *v.* Beatties.

answer, and shown by the evidence to have been done by the defendants, constituted such an *ouster* and adverse holding as would entitle the plaintiff to maintain ejectment at all; and, especially, as it does not appear that the plaintiff had any notice of their claim to the entire lot.

In the next place, it was at least at the option of the plaintiff, whether he would treat those acts as an *ouster* and adverse holding, or as an holding by the defendants in their character and right as tenants in common with him, for the behoof of their cotenant as well as of themselves.

In order to entitle the defendants to stand upon the objection that such form of action would afford the plaintiff ample remedy, the case, either as made by the plaintiff, or as shown by the defendants, should be such as the proposed action at law would be applicable to, and would carry through to an effectual remedy.

In the third place, it would be novel, in an action of ejectment, in order to ascertain and fix the damages, to procure and take an account by the jury, of the use, products and avails of the common property; of the services rendered and the just expenses incurred by the defendants in respect thereto, and, upon the whole, to settle the share and balance to which the parties would be respectively entitled.

In our opinion this ground of defence is not supported either by principle or precedent.

The result is, that the decree of the court of chancery is reversed, and the cause is remanded. to the end that an account may be ordered and the cause referred to a master for that purpose, and be proceeded with in said court to a final decree.