## Bonds, et al. *v.* Bonds

No. 39822 January 9, 1956 84 So. 2d 397

*Roberson, Luckett & Roberson,* Clarksdale, for appellant.

*Dulaney & Dulaney,* Tunica; *Kenneth Rayner,* Memphis, Tennessee, for appellee.

354

McGehee, C. J.

The petitioner, Annie Bonds, instituted this proceeding under Sections 1270 to 1272 inclusive, Code of 1942, to have herself declared one of the heirs at law of Martin Bonds, Sr., deceased, who was at the time of his

death on March 9, 1941, a resident citizen and householder of Tunica County, Mississippi, and who then owned in fee simple and occupied as his homestead and place of residence the SW¼ of the SE¼ of Section 30, Township 4, Range 10 West in said county.

The trial court held that the appellee was the lawful widow of Martin Bonds, Sr., and that the appellant Martin Bonds, Jr., had not occupied and farmed the land under a claim of ownership either on his own behalf or on behalf of himself and his sister or her children in such a manner as to constitute an ouster of the widow so as to make any of the statutes of limitations applicable. No partition or other relief was sought by the petitioner except that she asked to be declared to be one of the heirs at law of Martin Bonds, Sr., and entitled to a one-third undivided interest in the land in question.

There was a ceremonial marriage between the petitioner Annie Bonds and Martin Bonds, Sr., on March 9, 1929. They lived together for about one year when she moved to the home of her daughter about one mile from the forty acres of land here in controversy. She continued to live separate and apart from Martin Bonds, Sr., and in the home of her daughter until the latter moved to Memphis in 1953. They were never divorced. She had been married at least three times prior to her marriage with Martin Bonds, Sr. Her first husband died. She didn't know either at the time of her marriage to Martin Bonds, Sr., or at the time of the trial of this case, whether or not her second and third husbands had obtained a divorce from her and she only knew that she had not obtained a divorce from either of them. The appellants were unable to overcome the presumption in favor of the validity of her marriage to Martin Bonds, Sr., and the trial court therefore correctly indulged the presumption that her second and third husbands, whose whereabouts were unknown, had each obtained a divorce

from her and that therefore she was lawfully married to Martin Bonds, Sr.

During the year 1934 Martin Bonds, Sr., who was then about 81 years of age, had become in default on the payment of his annual installments on an indebtedness to The Federal Land Bank of New Orleans on the forty acres of land, and was unable to pay the taxes thereon or to farm the land. Thereupon his son, the appellant Martin Bonds, Jr., assumed the responsibility of operating the farm, meeting the annual payments to the Federal Land Bank, and for the payment of the taxes. He has continued to meet these obligations each and every year since 1934, and has continued to occupy and farm the land every year. It was not until the year 1952 that the petitioner asserted for the first time her claim to a one-third undivided interest in the land as a tenant in common of the appellant Martin Bonds, Jr., and as a tenant in common of the appellants Lorenzo McGaha and Mary McGaha Parrott, who were the sole heirs at law of Florence Bonds McGaha, one of the two children of Martin Bonds, Sr., by a former marriage.

The petitioner, Annie Bonds, attended the funeral of Martin Bonds, Sr., when he died on March 9, 1941, and testified at the trial of this proceeding that she was told at the funeral by some person that she had no interest in the forty acres of land, and she concedes that she made no claim to any interest therein until the year 1952 when Mr. Andrew Jepson told Mr. Louis Harris, on whose farm Annie Bonds lived with her daughter, that "I had come into possession". The petitioner testified that this was the first time she had ever had any idea that she had any interest in the land.

Thereupon her daughter's husband contacted the appellant Martin Bonds, Jr., advised him that he had learned that Annie Bonds inherited a one-third undivided interest in the forty acres of land, and the result was that Martin Bonds, Jr., entered into a written lease

from her for the year 1952 for the one-third interest claimed on her behalf and thereafter paid her the $130.00 rent agreed upon. Annie Bonds paid her portion of the taxes for that year. This was about eleven years after the death of Martin Bonds, Sr., and during which period Martin Bonds, Jr., according to his testimony, claimed the land for himself and his sister Florence Bonds McGaha until her death in 1946, and thereafter for himself and her two children, Lorenzo McGaha and Mary McGaha Parrott. During all of that period of more than ten years following the death of Martin Bonds, Sr., the appellant Martin Bonds, Jr., occupied the land, cultivated and made crops of cotton and corn, etc., thereon every year, appropriated the proceeds for the purpose of paying the annual installments on the debt to the Federal Land Bank, and the taxes, etc., while recognizing that his sister owned an undivided interest therein until her death in 1946, and that thereafter her children owned such interest. Neither Florence Bonds McGaha nor her two children ever occupied the land after the death of Martin Bonds, Sr., on March 9, 1941.

The appellant Martin Bonds, Jr., did not pay his sister any rent at any time, and, referring to his sister and her children, he testified that he told them that he would ''give them some rent and I told them that they couldn't look for a whole rent as I would have to keep up on the mortgage and the house.''

Whether a reasonable rent for the use of their interest in the land would have exceeded the amounts being paid to the Federal Land Bank, and for taxes, and in maintaining the improvements each year, was not shown. Nor is it shown that the appellant Martin Bonds, Jr., ever paid his father any rent during the years from 1934 until his death in 1941 other than to the extent of paying for him the annual payments to the Federal Land Bank and the taxes, etc., although he testified that

during that period he rented the land from his father. He was then asked "Q. Did your daddy have an arrangement that you take over the farm and pay the Federal Land Bank, the taxes, and, if there is anything made on the farm, that you would give him some? A. That is right." There was no written rental contract in that behalf, and his tenancy was therefore one from year to year, and could have been terminated on sixty days notice prior to the end of any year, by his father prior to his death in 1941 or by the heirs at law thereafter, but no such notice was ever given.

While the appellant Martin Bonds, Jr., testified that he was claiming the land during the ten years immediately following the death of his father in full recognition of the interest owned by his sister until her death and by her children thereafter, the wife of the said appellant and a representative of the Federal Land Bank both testified that he was claiming it as his own, and the appellee Annie Bonds testified that she knew that he was claiming it as his own during this ten year period while she was living only a mile away, and that she was not claiming any interest therein for herself until the year 1952 when she learned for the first time that she owned a one-third undivided interest therein as the widow of Martin Bonds, Sr.

 The appellant Martin Bonds, Jr., testified that his father had told him that the appellee, Annie Bonds, had a living husband at the time he married her, and that he had a witness to that fact; that for this reason this appellant did not recognize the appellee as being the owner of any interest in the land, and that he occupied and cultivated the same from the death of his father in 1941 until the year 1952 as aforesaid under a claim of ownership for himself and his sister until her death in 1946, and for himself and her children from 1946 to 1952. It is well settled that if he occupied and farmed the land under an adverse claim of ownership

as against the appellee for a period of ten years prior to 1952, the fact that he rented in 1952 the interest claimed by her would not defeat the title acquired by ten years adverse possession prior to that year. His action in renting her interest in the land in 1952 is merely of evidentiary value as throwing light on the issue of whether or not his possession had been adverse to her prior to that time. Lowi, et al v. David, 134 Miss. 296, 98 So. 2d 684; Rotenberry et al v. Arnold et ux, 212 Miss. 564, 55 So. 2d 141; Bentley v. Callaghan's Exr., 79 Miss. 302, 30 So. 709; Neal v. Newburger Co., 154 Miss. 691, 123 So. 861.

It is contended by the appellants that the rule to the effect that a tenant in common can not ordinarily claim title by adverse possession against his co-tenants on the ground that it will be presumed that he is in possession in accordance with his right of possession, is not applicable in the instant case for the reason that if the appellee was the lawful widow and an heir at law of Martin Bonds, Sr., she became entitled on March 9, 1941, when he died, to take possession of the homestead and to remain in the undisturbed possession thereof as long as she lives, and with the right to receive all of the rents and profits therefrom; that hence the appellants were not her tenants in common, with the right of possession on their part—an essential characteristic of a tenancy in common; and that therefore when the appellant Martin Bonds, Jr., took possession of the lands and occupied and farmed the same for ten years following the death of Martin Bonds, Sr., in disregard of any right that the appellee may have had therein, his possession became and continued to be hostile and amounted to an ouster.

The appellants cite the cases of Stevens v. Wilbourn, 88 Miss. 514, 41 So. 66, and Bohn v. Bohn, 193 Miss. 122, 5 So. 2d 429, in support of their contention that they were not tenants in common with the appellee.

Those cases do recognize the right of the widow to occupy the homestead and receive the annual rents and profits therefrom. Those decisions are based on Section 476 as to the descent of exempt property and on Section 478 which provides that exempt property shall not be partitioned in certain cases, found in the Code of 1942, (Sections 1410 and 1412, Code of 1930), but the first of which sections expressly declares that exempt property shall, on the death of the husband or wife owning it, "descend to the survivor of them, and the children and grandchildren of the decedent, *as tenants in common* * * *" (italics ours); and while the case of Bohn v. Bohn, supra, emphasizes in considerable detail the right of the widow to the undisturbed possession or use of the homestead, we are of the opinion that nevertheless the decision in that case recognizes that the widow and the children and grandchildren are tenants in common, subject to the right by the widow under the above mentioned statutes, following the death of the husband. That a tenancy in common exists among them is also recognized in the more recent case of LaBlanc v. Busby, Miss. 78 So. 2d 456, even though in that case the widow remained in possession after the death of the husband, whereas in the instant case she remained out of possession. The Court held that since she was under a duty to pay the taxes while in possession and under a duty to redeem the property from a tax sale, she could not purchase the tax title except for the benefit of both herself and her cotenants. The case is not in point from a factual standpoint but it nevertheless recognizes that a tenancy in common exists between the widow and the other heirs of the husband even though she had the exclusive right to occupy the exempt property as a homestead after his death.

 █ The question then presented is, does the fact that the widow is given the right under these statutes to have the undisturbed possession of the exempt home-

stead following the death of the husband have the effect of destroying the tenancy in common, which arose in the property upon the death of the husband, merely because of the fact that the right of possession of the other heirs is postponed pending the widowhood of the wife. We have concluded that this right of the widow does not destroy the tenancy in common between her and the other heirs at law of the deceased husband.

It appears that the decision of this case must be determined on the question of whether or not there can be an ouster by one or more tenants in common of another tenant in common where the latter does not know that he or she is a tenant in common with them. Ordinarily ignorance of his or her legal rights by a person against whom land is claimed by adverse possession is no defense against the running of the statutes of limitations, such as Sections 709 and 711, Code of 1942. But the precise question for decision is whether or not the lack of knowledge on the part of a person of the fact that he is *a tenant in common* would be a defense against the claims of other tenants in common under the rule that the possession of one is deemed to be for the benefit of all in the absence of an actual ouster; that is to say, May there be an ouster of a tenant in common who is without knowledge of the fact that he or she is such as to the property in question?

The proof discloses that after the ceremonial marriage of Martin Bonds, Sr., to the appellee on March 9, 1929, they lived together only about one year as aforesaid when, according to her testimony, he told her to leave home and she went to the home of her daughter who lived about one mile from this forty acres of land, and remained there until 1953, as aforesaid. She was asked "Q. And you knew what was going on over there on that forty acres? A. Yes, when I would go over there they would be working on it. * * * Q. And from then (the time of the death of Martin Bonds, Sr., on March

9, 1941) on until 1952 you acknowledged and believed that you had no interest in that land? A. That's right. * * * Q. Up until that time (1952) you didn't think you had any interest in this forty acre tract in this law suit? A. That's right. * * * Q. And you knew that he (Martin Bonds, Jr.) was raising crops, cotton and corn, over there on that land? A. Yes. Q. And you knew about that all the time? A. Yes. Q. And he didn't pay you any rent until 1952? A. No. Q. You didn't pay any taxes on that land up until 1952? A. You are right.''

The appellee was asked whether or not she knew that there was a deed of trust or mortgage on the land to the Federal Land Bank of New Orleans, and she answered that she did not. Her testimony in that regard is undisputed. She was then asked, ''Q. Why didn't you claim that land after Martin Bonds, Sr.'s, death? A. I thought I was getting a wife's part. Q. Did you know that you had a part over there? A. Yes, sir, old man Martin married me and I just decided I had a part of his part. Q. You knew that after he died? A. Yes, sir. Q. That you had a part of old man Martin Bonds' part? A. Yes, sir. Q. But you never did claim it until 1952? A. No, sir. I never did. Q. Why didn't you claim it back in the 40's? A. I didn't claim it until they come and told me about it. After they told me, I said 'I will be glad if I is got some land'. * * * Q. You didn't know it until Jepson told Mr. Harris and Mr. Harris told you about it; is that right? A. Yes, sir. Q. And that was in 1952? A. Yes, sir. * * * Q. Who did you think was claiming the land? A. I decided in my own mind Martin was claiming it all. Q. When did you decide that? A. I am talking about when old man Martin died. Some of them told me I couldn't get none of it. I made myself satisfied.''

The appellant Martin Bonds, Jr., testified that he and the appellee were good friends and that she would sometime visit in his home and spend the night with him

and his family during the ten years following the death of his father. He testified that he was in possession of the land at the time of his father's death on March 9, 1941, and that in fact he had been in possession thereof since 1934. He was asked "Q. Who did you consider owned it? A. Just me and my sister, and after her death me and my nephew and niece. Those are her children." He knew that his father had married appellee, but he testified that his father told him that the appellee had a living husband at the time he married her and that he had a witness to that fact, as hereinbefore stated, and that therefore he didn't consider that the appellee had any interest in the land. He was further asked "Q. From 1941 until 1952, did you have any idea whatsoever that Annie Bonds had any claim to this land? A. None at all. Q. When was the first time you heard about her making a claim? A. That was in 1952. * * * Q. You said in your testimony that you never told Annie Bonds that you and your sister were claiming to own this land? A. I never thought that she had any interest in it. Q. You never told her that you didn't think she had any interest in it? A. If I had thought that she had any interest in it I would have done something about it a long time ago. Q. You would have let her have her share of the land? A. Yes. Q. * *. And the only reason that you didn't give Annie Bonds her interest is that you didn't think she was legally married to Martin Bonds, Sr.? A. Yes. * * * Q. Was it your intention from 1941 through 1952 to claim this land adversely from Annie Bonds? A. I thought it was mine."

We do not have a case here where one tenant in common is relying upon possession pursuant to a recorded instrument purporting to convey to him the entire interest in the land, as has been true in a number of cases decided by this Court in holding that there has been an ouster by one tenant in common of his co-tenants. The proof in the instant case discloses on the one hand

that the appellee Annie Bonds, because of her want of information as to the fact of whether or not she had a living husband from whom she had not been divorced at the time she married Martin Bonds, Sr., did not know until 1952 that she had ever been a tenant in common in the land with the appellants. On the other hand, the proof discloses by the testimony of Martin Bonds, Jr., who was occupying and farming the land during the period in question, that he had no intention of acquiring by adverse possession or otherwise any interest that Annie Bonds may own in the land. He just did not know that she had any right or title to any interest in the land as the widow of Martin Bonds, Sr., which he could acquire by continuing in possession of the land after the death of his father. He frankly stated, as above shown, that "if I had thought that she had any interest in it I would have done something about it a long time ago. Q. You would have let her have her share of the land? A. Yes." It therefore affirmatively appears that both the appellee Annie Bonds and the appellant Martin Bonds, Jr., were under a misapprehension as to the fact whether or not she had a living husband from whom she had not been divorced at the time of her marriage to Martin Bonds, Sr.

We have given this case considerable thought and study, and some of us have been troubled over the question of whether or not there was an ouster of Annie Bonds by her tenant in common Martin Bonds, Jr., in view of her testimony, hereinbefore quoted, that "I decided in my own mind, Martin was claiming it all", but we have concluded that under the cases of Scottish American Mortgage Co. v. Bunckley, 88 Miss. 641, 41 So. 502, and Hurst v. Griffin & Sons, Inc., 209 Miss. 381, 46 So. 2d 440, there was no actual ouster of Annie Bonds by her tenant in common Martin Bonds, Jr. In the Bunckley case the tenant in common against whom the ouster was claimed did not know that he was such, and

in the Hurst case the person claiming the entire fee against those who were shown to be his tenants in common, did not know that they were even living, and he claimed as sole owner upon the theory that the tenants in common other than the one through whom he claimed were dead throughout the period relied upon for the acquisition of title by adverse possession.

Martin Bonds, Jr., relied upon the mistaken belief that he and the other appellants were the sole heirs at law of Martin Bonds, Sr., and his own testimony discloses that he did not intend to oust his stepmother of any lawful claim that she may have had in the land at the time he continued in possession thereof for approximately eleven years following the death of his father. Moreover, according to the testimony, Annie Bonds did not knowingly permit Martin Bonds, Jr., to appropriate all of the rents and profits of the land during the period in question as a repudiation of, or refusal to recognize, any lawful claim or interest that she had in the land. He did not intend to wilfully disregard the appellee's rights in the premises, since he testified that if he had thought that she had any interest in it he would have let her have her share a long time ago.

We are of the opinion that under all of the facts and circumstances there was no actual ouster of Annie Bonds by her tenant in common Martin Bonds, Jr., who says that he was not claiming the land as his own, but was claiming it on behalf of himself and the other descendants of Martin Bonds, Sr.

In affirming the decree appealed from, we do so on the peculiar facts of this case, without intending to establish as a precedent that in no case can one tenant in common be ousted by his co-tenant or co-tenants merely on the ground that the tenant in common sought to be ousted may not know that he is such.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie,* JJ., concur.