Fred DENTON and Oli Denton Pendergrass, Plaintiffs-Appellants,

v.

Arthur DENTON, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

June 17, 1981.

Permission to Appeal Denied by Supreme Court Sept. 21, 1981.

Roger E. Jenne, of Elliott, Goode, Jenne, Varnell & Scott, Cleveland, for plaintiffs-appellants.

Robert T. Byrd, III, Cleveland, for defendants-appellees.

## OPINION

SANDERS, Judge.

The principal issue on this appeal is whether the holding of real estate by one co-tenant was sufficient to oust the other co-tenants and deprive them of any interest in the property.

Mr. O. D. Denton died intestate in Bradley County in 1944. He had eight children by his first marriage and seven children by his second marriage. His first wife and one child predeceased him. He was survived by his wife and fourteen children. At the time of his death he owned a small farm in Bradley County consisting of approximately 53 acres. The widow and three or four of the children continued to live on the farm until 1962 or 1963 when they moved to Maryville. In October, 1960, the property was sold through the chancery court of Bradley County for delinquent taxes. The Defendant-Appellee, Arthur Denton, one of the sons of O. D. Denton, became the purchaser of the property for $181.16. In November, 1962, the clerk and master executed a deed to the property to the Defendant and the deed was immediately recorded in the office of the register of deeds. In 1964 the Defendant moved onto the property and lived there continuously until this lawsuit was filed in May, 1979.

The Plaintiffs-Appellants, Fred Denton and Oli Denton Pendergrass, filed this partition suit against the Defendant, Arthur Denton, and some 20 other heirs of O. D. Denton. In their petition they alleged that the parties are all co-tenants in the property. They asked the court to determine the respective interests of the parties. They asked that the property be sold for partition and the proceeds be divided among the parties.

The Defendant, Arthur Denton, filed an answer in which he denied the Plaintiffs or any of the other heirs of O. D. Denton owned any interest in the property. He contended he held a fee simple title to the property by virtue of his deed. He also filed a counterclaim in which he alleged he had made extensive improvements on the property; he had been paying the taxes on the property and none of the parties had offered to reimburse him for any of these expenses. He asked that, if the court holds the property is to be sold for partition, he should be reimbursed for his expenses out of the proceeds of the sale.

James Denton was the only other Defendant to file an answer and he neither admitted nor denied most of the allegations of the original complaint except, however, he alleged he had purchased two and one-half acres of the property from Arthur

Denton; he had made valuable improvements on the property; if the property was sold he should be reimbursed for his improvements on the property. In the alternative, he asked that the property be partitioned in kind and the two and one-half acres he had purchased be set apart to him.

On the trial of the case it was stipulated that if it was found by the court that the property should be partitioned or sold for partition the question of improvements and rents would be referred to the clerk and master. Upon the conclusion of the trial the chancellor held that Arthur Denton's purchase of the property at the tax sale was for the benefit of the co-tenants but went further and held there had been an ouster of the co-tenants. Defendant had held the property adversely to the co-tenants and it would be inequitable to disallow him title to the property.

The Plaintiffs have appealed, insisting the chancellor was in error.

■ It is a well-settled principle of law in this jurisdiction that where one tenant in common purchases the common property at a tax sale, foreclosure, or buys in an outstanding title or other overhead claim, he does so for the benefit of the other co-tenants. The leading case on this proposition is *Perkins v. Johnson*, 178 Tenn. 498, 160 S.W.2d 400 (1942). There the Supreme Court, in giving the reason for the rule, quoted with approval from the landmark case of *Tisdale v. Tisdale*, 34 Tenn. (2 Sneed) 596, as follows:

" 'Tenants in common by descent, are placed in a confidential relation to each other, by operation of law, as to the joint property, and the same duties are imposed as if a joint trust were created by contract between them, or the act of a third party. It may be different, where they claim title by distinct purchases, even of the same original title, but that is not the case before us. Being then interested with, and for each other, in the property, each one is prohibited from acquiring rights in it, antagonistic to the others. 1 White & Tudor, 53. Being associated in interest as tenants in com-

mon by descent, an implied obligation exists to sustain the common interest. This reciprocal obligation will be vindicated and enforced in a court of equity, as a trust. These relations of trust and confidence bind all to put forth their best exertions, and to embrace every opportunity to protect and secure the common interest, and forbid the assumption of a hostile attitude by either; and therefore, the purchase by one of an outstanding title, or an incumbrance upon the joint estate, in his own name, will enure to the equal benefit of all, but they will be compelled to contribute their respective ratios of the consideration actually given.' "

In passing on the case at bar the chancellor recognized this rule but held there had been an ouster of the cotenants and the Defendant had acquired the property by adverse possession. In his determination of the case the chancellor said:

"The general rule is that tenants in common cannot buy in the common property at a tax sale, or foreclosure sale, or buy in an outstanding title or other overhead claims except for the benefit of his co-tenants. This is the doctrine set down in *Tisdale v. Tisdale*, 34 Tenn. (2 Sneed) 596, and many other cases since the *Tisdale* decision. Mr. Denton's purchase was for the benefit of the co-tenants.

"One holds in trust for his co-tenants, but there are instances when adverse possession is applicable to a co-tenant. The rule was explicitly stated in *Hilton v. Duncan*, 41 Tenn. (1 Cold) 313, where the Court stated:

" 'Prima facie, the possession of one tenant in common, is to be regarded as a possession of the others; *but if one of them takes the possession for himself, claiming the entire tract as his own, and receives the rent and profits, and uses them without accounting to the others, and this is acquiesced in for a period of twenty years or more, an actual ouster of his companion may be presumed*, and that he has released or conveyed his interest to the party in possession. The possession of a tract of land by one tenant in

common, by purchase and claim therein entirety and severalty, and not an undivided part thereof in co-tenancy is an adverse possession.' (Emphasis ours)"

"Odly enough, this type of question has come before this Court on many occasions in the last few years. In each of those occasions, we have held there was not sufficient proof of an ouster or adversity to enable the co-tenant possessor to take title. After careful consideration, a different ruling is given in this case. Arthur Denton took complete control of this property nearly twenty years ago. It was recognized by the co-tenants as his property. They have never shared in a tax burden nor paid any of the purchase price. This is not the controlling factor, but it is a matter to be reviewed. In addition, Arthur Denton has treated the property as his own and in fact sold a portion of it. From all of the proof it appears there has been an ouster. Arthur Denton has held adversely, even against the co-tenants, and under the circumstances it would be totally inequitable to disallow his title."

■ While we agree with the chancellor that one co-tenant may hold adversely to other co-tenants, we cannot agree that the circumstances in the case at bar warrant such holding. In each of the cases where our courts have held that one co-tenant held adversely to other co-tenants, it has been based on the circumstances peculiar to the particular case. In the *Hilton* case the co-tenant holding the property had purchased the interest of the claimant's mother in the property but had failed to get a deed. In the case at bar it appears there had never been any controversy over right of possession of the property. At the time the Defendant bid the property in at the tax sale he was told there was a two-year redemption period. After waiting the two years he received a deed from the clerk and master. He testified to his conversation with the clerk and master at the time of the delivery of the deed as follows: "I said, 'Can anybody bust it up?' and he said, 'No, it's yours.'"

We think the proof supports the conclusion that neither the Defendant nor any other of the heirs of O. D. Denton were aware of any interest of the heirs of O. D. Denton in the property other than the Defendant until a short time before this litigation started. In October, 1975, the Defendant, Arthur Denton and his wife, sold a two and one-half acre tract of the property here in dispute to his brother, Defendant James Denton. Some time later James applied to a bank for a loan on the property. The loan was refused because he did not have a deed from the other heirs. We think this was the first time any of the parties were made aware of the condition of the title to the property. This brings us to the single issue of what are the rights of the respective parties where one co-tenant holds possession and both he and the other co-tenants are ignorant of the existence of the co-tenancy.

The general rule is stated as follows in Am.Jur.2d, p. 260, Adverse Possession, Sec. 173:

"Although there is considerable confusion in the cases as to whether there can be adverse possession by a cotenant where he or his cotenant or both are ignorant of the cotenancy, on principle it would seem that one who holds sole possession of premises as the exclusive owner has a possession which is adverse to the whole world, including his cotenant out of possession whether either or both were ignorant of the cotenancy; and accordingly in a number of cases possession has been deemed adverse although both parties were unaware of the cotenancy."

This, however, is not the rule in this jurisdiction. The leading case in this jurisdiction on this issue is *Hydas v. Johnson*, 28 Tenn.App. 126, 187 S.W.2d 534 (1944). In that case J. D. Hensley and wife, Mary, purchased a piece of property in 1917. Under the law as it existed at that time, each acquired a one-half undivided interest in the property. J. D. Hensley died intestate in 1921 survived by his wife and children. The widow and Willie Hensley continued to occupy the property until the death of Mary

Hensley in 1929. Mary Hensley left a will willing the property to Willie Hensley. At that point Willie owned one-half of the property by virtue of his mother's will and in the other half he owned an equal share with the other children. Willie continued to live on the property, farming it part time and renting it out part time. All of the parties were of the opinion that the deed of 1917 created an estate by the entireties and Mary's will gave Willie title to the entire property. In a suit for partition the chancellor held that Willie's holding of the property was not adverse to the other heirs. The court of appeals, in sustaining the chancellor, said at 535:

"In this case, as in *Drewery v. Nelms* [132 Tenn. 254, 177 S.W. 946] the defendant merely occupied the property, appropriating the rents, and sold a small amount of timber valued at $12 without any question arising as to his ownership. Does the circumstance that the parties mistakenly thought he owned the entire property by virtue of the will of his mother afford a distinction between that case and this? We think not. There was no notice to complainants of a hostile possession by defendant to arouse them to active investigation and assertion of their rights and it is this which the law requires before the cotenant's presumptively friendly possession can be converted into one of a hostile character. Defendant has not shown that he has been injured by complainants' failure to assert their rights. On the contrary, he has had the full use of the property and, under the Chancellor's decree, he has been exonerated of any liability to account for rents and profits during his occupancy. Under the circumstances, we do not see that there has been any conscious acquiescence on the part of complainants and are of opinion the Chancellor was correct in not dismissing the bill because of laches based wholly upon the lapse of time."

The facts in the case of *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956) were very similar to *Hydas v. Johnson*. In *Moore* the disputed property was conveyed to R. D. Casey and Elizabeth Casey without any recitation as to their status. They were husband and wife. Elizabeth died in 1927. Under the law as it then existed, her one-half interest in the property went to her heirs. About a year later Robert Casey married Eva B. Casey. In 1941 Robert Casey and wife, Eva, conveyed the property to a third party who immediately conveyed it back to them for the purpose of creating a tenancy by the entireties. Robert Casey died in 1950 and left a will devising the fee simple title to Eva Casey. Eva Casey subsequently conveyed the property to Lizzie B. Moore, after which suit was brought by the heirs of Elizabeth Casey. It was conceded that the parties for many years, on up until shortly before the suit was brought, believed Robert Casey owned the property in question. In sustaining the chancellor's holding in favor of the heirs of Elizabeth Casey the court quoted with approval, in part, as quoted above from *Hydas v. Johnson*. The court further quoted with approval, at 699:

" 'The taking and recording of a deed by one tenant in common from a third person will not have any effect towards constituting such an ouster of his cotenant as would lay the foundation for the commencement of an adverse possession against him, unless accompanied and followed by a hostile claim of which the cotenant had knowledge, and by acts of possession not only inconsistent with, but in exclusion of, the continuing right of the cotenant in the premises. Putting a tax deed for the whole tract on record is no ouster of a cotenant unless he knew of the adverse claim, and this is true even though the claimant enters under such a deed and exercises certain acts of ownership.' "

The case of *Hampton v. Manuel*, 56 Tenn. App. 95, 405 S.W.2d 47 (1965) is also in point. In that case Fred Hampton and wife, Flora Hampton, purchased a house and lot as tenants by the entireties in 1926. In 1934 Flora deserted Fred but he continued to live in the property. In 1944 Fred divorced Flora but no disposition was made of the property in that proceeding. Flora

Hampton died in 1952 leaving no children. In 1963 the State Highway Department filed a condemnation proceeding to condemn the property. The heirs at law of Flora Hampton were made defendants to the suit. This was the first notice they had of their interest in the property. On the trial Fred Hampton insisted he was entitled to the entire fee in the property by virtue of the doctrine of presumption of title arising out of his continuous, exclusive, uninterrupted possession of the property from 1934 until 1963, constituting more than 20 years. He also contended that his divorce from Flora Hampton in 1944 amounted to an ouster of her as a tenant in common; he had been in exclusive and uninterrupted use of the property since that time, constituting a period of a fraction less than 20 years and was entitled to the fee simple title. In rejecting the insistence of Fred Hampton and in upholding the interest of the heirs of Flora Hampton, the court relied on the cases of *Moore v. Cole, supra*, and *Memphis Housing Authority v. Mahoney*, 50 Tenn. App. 117, 359 S.W.2d 851 (1962).

■ We accordingly hold it was error for the chancellor to find there had been an ouster of the co-tenants and to dismiss their suit for partition.

The decree of the chancellor is reversed and the case is remanded for further hearing and the fixing of the interest of the respective parties in keeping with this opinion. The cost of this appeal is taxed to the Appellees.

PARROTT, P. J., and GODDARD, J., concur.