## In re Estate of Lucy Neil

[565 A.2d 1309]

No. 87-171

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed June 16, 1989

Motion for Reargument Denied as Untimely Filed July 14, 1989

---

*Therese M. Corsones* of *Corsones & Hansen*, Rutland, for Petitioner-Appellee.

*Timothy J. Wells*, White River Junction, for Petitionees-Appellants.

**Peck, J.** Title to real estate near a ski resort in Sherburne, Vermont, was awarded to petitioner, Roger I. Neil, by adverse possession. Three of his sisters: Iris Neil Hickory; Evalina A. Martin as administratrix of her father's estate; and Marjorie Neil Wells, deceased, represented by her husband and successor in interest, Edwin Wells, contest the order of the probate court. Five questions are certified for our review under V.R.A.P. 13(c). They may, however, be consolidated into one query: whether the probate court, as a matter of law, properly determined that petitioner acquired ownership of the parcel of land by adverse possession against his fellow co-tenants. *In re Fletcher*, 144 Vt. 419, 422, 479 A.2d 134, 135 (1984) (certified questions are only guidelines to the Court). We hold that the probate court erred in its conclusion that petitioner acquired sole title to the property by adverse possession.

Petitioner, with his mother, Lucy Neil, acquired the Sherburne property by warranty deed, which was recorded on July 20, 1945. Petitioner alleged that he paid for the land with his own money and that his mother's name was placed on the deed at his request in order to secure his interest in the property while he was in the armed forces. It is unclear from the record, however, whether petitioner paid the entire price or whether his mother contributed toward the purchase.

Lucy Neil died in 1956, survived by her husband (now deceased) and five children. Mrs. Neil's estate was probated, but her interest in the property was not included in the inventory of the estate's assets. As part of the probate process each heir consented to the final accounting filed by the estate's administrator, indicating that the accounting included all known property of the deceased.

In 1981 petitioner sought to sell a portion of the property and discovered that he did not have clear title. Other heirs of his mother claimed partial ownership in the property as successors in interest to their mother's tenancy in common. Consequently, the petitioner brought an action in the probate court pursuant to 14 V.S.A. § 1801 requesting that he be awarded sole ownership of the property through adverse possession.[1]

The probate court found that petitioner has posted the property, cut timber from it for his own use and for sale, ran and parked heavy equipment on it, and maintained a stump dump on the property. He paid all real estate taxes assessed against the property and transferred, with his signature alone, a right-of-way to the Town of Sherburne. The probate court concluded that petitioner had treated the land as his own from the date of acquisition, and had thereby acquired title over the other claimants' interests by adverse possession.

Adverse possession requires fifteen continuous years of open, notorious, and hostile possession of another's property. *Moran v. Byrne*, 149 Vt. 353, 355, 543 A.2d 262, 263 (1988). A claimant under the doctrine has the burden to prove adverse possession sufficient to supersede the property interests of any titleholders of record. See *Higgins v. Ringwig*, 128 Vt. 534, 538, 267 A.2d 654, 656 (1970). Here, petitioner's burden of proof is greater than in the usual case because he seeks to prove that his possession has excluded the property interests of family members who are, by operation of law, his fellow tenants in common. See *Harlow v. Miller*, 147 Vt. 480, 484, 520 A.2d 995, 998 (1986) (proof of adverse possession must be established by stronger evidence where claim is against family members); *Scott v. Leonard*, 119 Vt. 86, 102–03, 119 A.2d 691, 700 (1956) (presumption against ouster of co-tenant can be overcome only by some overt and notorious act or acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant).

---

[1] Petitioner raised other arguments at trial, but they were not among the questions raised in this Court.

■ By virtue of his deed, petitioner's interest in the land was that of a tenant in common with his mother under 27 V.S.A. § 2, which governs the construction of such deeds. Therefore, upon her death petitioner became a co-tenant with his mother's heirs. See *Bemis v. Lamb*, 135 Vt. 618, 621, 383 A.2d 614, 617–18 (1978). Petitioner bases his claim on the fact that none of the parties were aware of their status as co-tenants until petitioner's attempted transaction in 1981. He supports his claim with evidence that he paid all real estate taxes and expenses relative to the property. Petitioner also provided numerous examples of his use of the property for his own benefit to show that his possession of it was open, notorious, and hostile. Petitioner contends, in essence, that his possession with claim of right from the inception of the deed has been adverse to the interests of his co-tenants despite their ignorance of their rights to the property.[2] We do not agree.

## I.

Where a co-tenant would claim sole right to property held in common he must "oust his fellow co-tenants by some overt and notorious act of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the rights of the others." *Id.* at 621, 383 A.2d at 617. Where no co-tenancy relationship exists, the requisite "claim of right" arises by presumption if the claimant's use is open and notorious, without evidence of permission by the rightful owner. *Russell v. Pare*, 132 Vt. 397, 404, 321 A.2d 77, 82 (1974).

■ However, where the circumstances involve co-tenants, the presumption is that one co-tenant in possession is holding the property for all co-tenants. *Leach v. Beattie*, 33 Vt. 195, 198 (1860).

> If a co-tenant enter upon the whole or part of the common property, as he has a legal right to do, the law presumes that he intends nothing beyond an assertion of his right.

---

[2] Petitioner does not specify whether his adverse possession began from the execution of the deed, in 1945, or whether his possession was "open, notorious, and hostile" only as to the interests of the current co-tenants. Because we find that he has not met the burden of proving adverse possession against any co-tenants, we do not reach a determination regarding the duration of the period of possession.

In order to sever his relation as co-tenant, and render his possession adverse, it must be affirmatively shown that the . other co-tenants had knowledge of his claim of exclusive ownership, accompanied by such acts of possession as were not only inconsistent with, but in exclusion of, the continuing rights of the other co-tenants, and such as would amount to an ouster as between landlord and tenant.

*Scott*, 119 Vt. at 102, 119 A.2d at 700 (citation omitted).

In *Scott* the defendants claimed that their improvements and use of the property gave notice of their adverse possession to the plaintiffs, record titleholders to an appurtenant easement. The defendants' use and improvements, however, were held to be consistent with the continuing rights of the plaintiffs. Only the placement of a barricade across the roadway which was subject to the easement gave notice to the plaintiffs that the defendants' possession was to the exclusion of rights of the other titleholders. *Id.* at 103, 119 A.2d at 701.

■ The evidence produced in *Scott* was similar in nature to the evidence of sole possession produced here. It is undisputed that petitioner possessed the property and improved it, paid taxes and generally took responsibility for it as the owner. Despite the expense involved, however, such care for the land is not necessarily inconsistent with the interests of his co-tenants. See *Waterman v. Moody*, 92 Vt. 218, 234, 103 A. 325, 332 (1918) (law presumes that payment of taxes by one co-tenant is on behalf of other, nonpossessory co-tenants).

■ Here, the probate court also found that the petitioner's father, Irving Neil, had held various public offices before and after his wife's death which would have brought the title of the property to his attention. The court based its conclusion on evidence entered by the petitioner that the senior Mr. Neil had been a town lister, constable and tax collector. The court held that Mr. Neil knew or should have known of the adverse nature of the petitioner's possession through the town tax rolls which showed the property listed in petitioner's name only. However, it is not clear from the transcript whether the senior Mr. Neil can be attributed with actual knowledge of his wife's

ownership interest, or the deed and its legal construction. Constructive notice to the nonpossessory co-tenants is not sufficient to constitute an ouster. *Scott*, 119 Vt. at 102, 119 A.2d at 700; *Waterman*, 92 Vt. at 234, 103 A. at 332. Accordingly in *Waterman*, this Court noted that information contained in the tax rolls does not constitute ouster. 92 Vt. at 234, 103 A. at 332. Therefore, the court's conclusion of ouster based on constructive notice is in error.

One finding stands alone to support the holding that petitioner had excluded the rights of his co-tenants in a manner which constituted ouster: the transfer of a right-of-way to the town for the purpose of making a roadway. That right-of-way was conveyed by petitioner as "owner in fee" in May 1958. Such a conveyance, especially given its visibility as part of a town road, could amount to an ouster. *Id.* at 233, 103 A. at 331–32. In order to determine whether this fact supports the conclusion reached here, however, we must question whether the co-tenants were aware of their rights and could, therefore, have been ousted.

## II.

Our opinions contemplating ouster of a co-tenant have, to date, concerned record titleholders whose interests were conveyed by deed or by probate of an estate. In each case, the titleholders had or should have had knowledge of their interest in the subject parcel. See generally *Bemis v. Lamb*, 135 Vt. 618, 383 A.2d 614 (property included in inventory of estate assets); *Scott*, 119 Vt. 86, 119 A.2d 691 (co-tenancy by deed); *Waterman*, 92 Vt. 218, 103 A. 325 (co-tenancy by deed). Co-tenant titleholders are called on to defend their interests only where persons "reasonably attentive to [their] own interests would have known that an adverse right was being asserted." *Waterman*, 92 Vt. at 238–39, 103 A. at 334; see also *Zuanich v. Quero*, 135 Vt. 322, 325, 376 A.2d 763, 765 (1977). In order for parties to be reasonably attentive to their interests as co-tenants, however, they must first be aware that their interest in the property exists.

State courts are divided as to whether co-tenants, ignorant of their interests, can be dispossessed of their rights to title through adverse possession. Compare *Allen v. Batch-*

*elder*, 17 Mass. App. 453, 459 N.E.2d 129 (1984) (jury may infer ouster from long, exclusive and uninterrupted possession by one co-tenant) with *Collier v. Welker*, 19 N.C. App. 617, 199 S.E.2d 691 (1973) (possession by one co-tenant is possession by all). While some courts are willing to "find adverse possession after very long periods of sole occupancy" by the claimant, 4A R. Powell, Law of Real Property ¶ 603[2] (1986), other jurisdictions protect unknowing co-tenants in perpetuity. See, e.g., *Bonds v. Bonds*, 226 Miss. 348, 84 So. 2d 397 (1956); *Denton v. Denton*, 627 S.W.2d 124 (Tenn. Ct. App. 1981). Here, as in *Denton*, the result may seem inequitable to one who has paid for all or part of the land, assumed sole possession of it, and taken responsibility for its maintenance for more than the statutory period. Nevertheless, because of the potential for abuse with a less stringent law of adverse possession, we believe the better policy is to require significantly more proof of an adverse possessor in such circumstances. Proof of all of petitioner's activities, while they suggest an ouster, cannot erase the rights of parties who, through no fault of their own, lacked knowledge of their interest in the real estate and thus were unable to protect their interests.

Here, the probate decision implicitly attributes constructive notice, or at least inquiry notice, to Irving Neil of his ownership interest due to his civic involvement. His interest, as well as that of the other heirs, was acquired through descent. See 14 V.S.A. § 551. However, although Lucy Neil's estate was probated, her interest in the real property was not included in the inventory of her estate. The court treats the failure of the parties to claim their interest at the time Lucy Neil's estate was probated as a waiver of their rights. However, the fact that none of the heirs moved to amend the inventory to include the property interest indicates a lack of knowledge on their part. See 14 V.S.A. § 1051; see also *Waterman*, 92 Vt. at 229, 103 A. at 334 (inventory admissible to prove knowledge of decedent's property interest).

While findings would usually be construed to support the probate decree, these inconsistent findings "give rise to reversal." *Hill v. Grandey*, 132 Vt. 460, 466, 321 A.2d 28, 32 (1974). In light of the increased burden on adverse possessors to prove ouster among co-tenants, especially those who are family members, we are unwilling to sanction constructive or

inquiry notice as a sufficient basis to start the running of the statutory period, nor will we hold that the heirs waived their rights without proof of their knowledge of them. Therefore the conveyance of the right-of-way does not operate to oust Irving Neil, or any co-tenant, unless actual knowledge of the property interest is first found or lack of knowledge is found to be unreasonable.

## III.

 Petitioner, in his complaint, raises the equitable remedy of laches against the heirs. We note in passing that disclaimer of an interest by descent must be made in a written statement. See, e.g., 14 V.S.A. § 1953. Nor may the co-tenants' defense against the adverse possessor be precluded by operation of laches on the record in this action. See *Major v. Shaver*, 187 F.2d 211, 212 (D.C. Cir. 1951). Laches requires finding both unexcused delay and prejudice to the opposing party. *Id.*; *Laird Properties New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 282, 305 A.2d 562, 570 (1973). No findings to either effect were made here. Especially where co-tenants are family members and one of them is in possession of the land, the others must actually know that the possessor is holding adversely to them in order to bar their claim through laches. *Major*, 187 F.2d at 212.

 The question raised in the present petition is answered in the negative. The cause is, therefore, remanded to the probate court for determination of the rights each heir may derive from the co-tenancy of Lucy Neil, taking into consideration whether each knew or reasonably should have known of their respective interest and the effect, if any, of petitioner's conveyance of the right-of-way.

*The decision of the probate court is vacated, and this matter is remanded for further proceedings not inconsistent with this opinion.*

**Springer, D.J.** (Ret.), Specially Assigned, concurring in the result; dissenting from decision on the law. As the foregoing opinion for this Court states, this appeal from probate court involves but one question, i.e., whether the probate court, as a matter of law, properly determined that petitioner-appellee

gained ownership of the parcel of land in question by adverse possession against his fellow co-tenants. Obviously, the answer to that question depends on what the law of adverse possession is when the person claiming ownership of land under it is a co-tenant of the person against whom the claim is made. In this case an additional factor is involved, for it is alleged that the co-tenants did not know that they were co-tenants. The majority concludes that, under those circumstances and on the facts found by the trial court, the question at issue should be answered in the negative. In my view, that conclusion is premature for reasons stated below. I do agree, however, that the case should be remanded for further findings by the trial court.

## I.

Since the law of adverse possession in this state as it relates to cases involving co-tenants who know they are co-tenants is fully and well stated by Justice Peck's opinion for the majority, there is no need for me to state it herein. However, this is a case of first impression where the co-tenants or some of them do not know of the existence of the co-tenancy. The trial court did not make any finding that the parties knew of the co-tenancy, although it could and should have done so. Notwithstanding that fact, the parties briefed this case on the basis that they had no knowledge of the co-tenancy until 1981 when appellee approached them to obtain a release of their title interest. The majority decides the question at issue herein on the same basis. I reluctantly decline to join them until a finding is made as to that knowledge. In my opinion that is the crux of the question posed in this case, and the problems in it stem from the absence of a finding thereon.

If the trial court had fully considered facts contained in the record, it is likely that it would have found that one or more of the appellants, if not all of them, did have knowledge of the co-tenancy. Such a finding would bear directly on the basic elements of adverse possession, such as whether the acts of the appellee were sufficient to put them on notice as to ouster and the hostile nature of the claim, and would clarify the question of laches about which the majority of this Court is concerned. I will deal with the fact situation later.

My reluctance to join the majority opinion is also based on what I perceive as an illogical position as to the effect that lack of knowledge by co-tenants as to the existence of the record co-tenancy has on the basic elements of adverse possession. To prove adverse possession and thereby gain ownership of real property one must possess that property in an open, notorious, hostile and continuous manner for, under the statute of this state, a period of fifteen years. When that is done, the law presumes that the possessor has ousted anyone claiming to be the true owner by reason of a record title, however it has come to him. The basis of that presumption is that when the person holding the record title fails to act to protect his interest in the property for the statutory period, he acquiesces in or permits the possession by the claimant to negate his own rights, in other words, he permits himself to be ousted.

But this Court has held that when the opposing parties are co-tenants, there is a presumption that the possessor is exercising possession as an incident of the co-tenancy relationship. Moreover, the possessor must overcome that presumption by clear, definite and unequivocal notice to the co-tenant that his possession is "hostile" as that term is used in the law of adverse possession, i.e., that he is claiming a right to the exclusive ownership of the property.

When all of the parties know of the co-tenancy, that rule is at least logical even though it is inconsistent with the basic presumption underlying the doctrine of adverse possession; but when they do not, it is illogical. In the latter situation, the co-tenants not in possession could have no reasonable expectation that they should be treated any differently than members of the general public. Nor is there any reason for the person in possession to expect that he must act any differently toward the co-tenants than toward the general public.

When the co-tenants are family members, this Court has held that the claimant must establish his claim by stronger proof than when there is no such relationship. *Harlow v. Miller*, 147 Vt. 480, 484, 520 A.2d 995, 998 (1986). However, that too is illogical when all of the co-tenants, although family members, do not know of the co-tenancy. If the acts are hostile enough to put the general public on notice, the same acts should suffice for family members not in possession when they

do not know of the co-tenancy. By like token, the claimant would have no reason to believe he had any obligation to treat family members any differently than members of the public, certainly not that he had to take any stronger action or give any more notice that he intends to oust them. The position of the majority, if carried to its logical conclusion in family member co-tenancy cases, would result in the claimant never being able to establish adverse possession. Therefore, when none of the parties know that they are co-tenants, the rule should be that the proof required of the claimant should be the same as for the general public even when family members are involved. Cf. *Allen v. Batchelder*, 17 Mass. App. 453, 459 N.E.2d 129 (1984); *Collier v. Welker*, 19 N.C. App. 617, 199 S.E.2d 691 (1973); and *Graham v. Graham*, 45 Misc. 2d 198, 256 N.Y.S.2d 888 (Sup. Ct. 1965); cf. also 3 Am. Jur. 2d *Adverse Possession* § 173. Thus, I believe that this Court should reconsider the whole matter of the effect of co-tenancy in adverse possession cases.

It should be noted also that our rule in co-tenancy cases, which requires actual notice, prevents adoption of any theory of constructive ouster. We should reconsider the actual notice requirement also.

## II.

Whether a person claiming ownership of real estate by adverse possession has acted to satisfy the rule as to open, notorious, hostile and continuous possession for the statutory period requires, of course, a determination of the facts sufficient to enable the court to apply the law; so, when a co-tenancy of which the parties have had no knowledge is alleged, the trial court must also find the facts as to that knowledge so that it may apply relevant law. Without adequate fact finding by the trial court, an appellate court cannot know what law applies.

On the facts in this case it is clear that appellee has been in possession of the land in question from 1945 until 1981. During that period, he had provided all of the care which the land had received, had made whatever improvements had been made on it, and had paid not only for that care and those improvements but also for all of the taxes on it without any contribution from any of the co-tenants.

Although the trial court made findings of facts as to other aspects of the case, they are sparse, indefinite in many respects and do not include findings as to facts admitted on the record, in the pleadings, in response to interrogatories or upon which conflicting evidence was presented. There is no finding as to the knowledge of the parties about the co-tenancy. If such findings had been made, they would clarify both the question of knowledge of each of the parties as to the existence of the co-tenancy and whether the actions of the appellee were sufficiently strong to put the appellants on notice that his possession was hostile and sufficient to constitute ouster, as well as those relating to laches. From my understanding of the record, the needed findings could have been made. The following are some of the instances of deficiencies in the findings which could have been cured.

The trial court's Finding of Fact No. 17 states:

> That the petitioner, Roger R. Neil, went through the ninth grade of school. He never had any education beyond that point. It is the petitioner's contention that he paid for the property out of his own funds and that he never received any contributions from any other individual, including his mother. His sister, Evalina Martin, testified in petitioner's behalf, and sustained his position. His other sister, Elizabeth Carbonneau Wells, testified that her mother paid for the property, so there is a conflict in the testimony as to where the source of the funds came from, as far as the purchase of the property is concerned.

The court did not find who in fact did pay for the property.*
Finding No. 18 reads:

> That the petitioner, Roger I. Neil, on May 5, 1958, executed an agreement with the Town of Sherburne to convey a right of way for an access road (Pet. Ex. #1). The Town of Sherburne acknowledged in Petitioner's Exhibit #1 that "Roger I. Neil was the owner in fee" of the property which is referred to in paragraph 8.

---

* It is interesting to note that although Elizabeth Carbonneau Wells testified that on more than one occasion her mother had said she had paid for the land and had an interest in it, so that Elizabeth Carbonneau Wells had knowledge of that fact, Elizabeth claimed not to have known that she, as an heir of her mother, was a co-tenant in the property.

It ignores the testimony of the petitioner that his father, the town tax collector, assisted the selectmen when they obtained that right of way.

Finding No. 20 reads:

> That Irving Neil, husband of Lucy Neil, held several positions with the Town of Sherburne both before and after the death of his wife, Lucy Neil, including that of lister, constable, tax collector and justice of the peace. In these capacities, he never claimed any interest in the property in question on behalf of his wife, Lucy Neil, during the period prior to her death on August 2, 1956, nor did he make a claim that her estate had any interest in the property in question subsequent to her death when her estate was administered and probated through the Rutland District Probate court.

Finding 20 is indefinite in that it fails to reflect the fact that Irving Neil was a lister in 1954 and 1955, and tax collector in 1956 through 1959, the very period during which his wife died and her estate was administered. In both of those capacities he had a duty to know who owned the property and to correctly show the owner in the grand list of the town. Not only did he have that duty, but he was undoubtedly familiar with the effect of the language of the deed creating the co-tenancy and its effect on his own rights. It is unfortunate that he died in 1984 before trial. Nevertheless, the effect of his office in the context of these facts may yield a specific legal conclusion regarding his knowledge.

Nor does Finding No. 20 (or any other finding) refer to the testimony that the town tax records show, that before 1959 the land in question was listed in the grand list in the names of both Roger Neil and the Estate of Lucy M. Neil as the owners, and that the tax notices for 1958 and 1959 were sent to Roger Neil. His father may also have received it. Certainly he should have known of the impact of her death on the assessment.

The absence of those facts in the findings suggests that at least one of the appellants knew of the co-tenancy (thus raising another question) and bears on the issue of whether that party was guilty of laches. Certainly this possibility requires remand for further findings.

## III.

In addition to my suggestions in Parts I and II hereof, there is another problem bothering me about this case. In considering whether sufficiently strong evidence is present in this case to establish a hostile possession by the appellee, the majority may be not seeing the forest for the trees (an appropriate pun in this case if ever one was appropriate). Given the undisputed fact that it is forest land about which this case revolves, it is hard to imagine how much stronger action could have been taken by the appellee to show that he was claiming ownership if one assumes, as do the parties and the majority of this Court, that none of the parties knew before 1981 that a co-tenancy existed. Common experience in Vermont is that forest land is rarely, if ever, fenced. It is usually logged periodically, although some enlightened owners do cut selectively on a regular basis. The usual practice was followed by the appellee. Furthermore, the fact that one or more of the appellants went on the land occasionally is not significant, despite appellants' argument to the contrary on the question of continuity of appellee's possession, in view of Vermont customs in regard to hunting, hiking, and horseback riding through such land when it is not posted.

In discussing the sufficiency of appellee's acts as to ouster, the majority discusses them one by one and concludes that no one of them except possibly the last one they mention is sufficient. That is like using a camera to photograph a scene and, by use of a zoom lens concentrating on small portions of the scene one after the other, not getting the whole picture. I ask again, what more would one usually do to exercise exclusive control of a woodland lot of about twenty-five to thirty-five acres than appellee did? So, even on the facts which the trial court found and the parties and the majority accept, it is difficult for me to accept the conclusion of the majority in answering the question mentioned at the outset as being the only legal issue in this case.